[No. S132772. Feb. 15, 2007.]

LESLIE J. GRISHAM et al., Plaintiffs and Appellants, v.
PHILIP MORRIS U.S.A., INC., et al., Defendants and Respondents.

## COUNSEL

Baum, Hedlund, Aristei & Guilford, Baum Hedlund, Frances M. Phares, Michael L. Baum, J. Clark Aristei; Law Offices of Daniel U. Smith and Daniel U. Smith for Plaintiff and Appellant Leslie Grisham.

Brayton Purcell, Alan R. Brayton, Gilbert L. Purcell, Lloyd F. LeRoy and Nance F. Becker for Nikki Pooshs as Amicus Curiae on behalf of Plaintiff and Appellant Leslie Grisham.

Arkin & Glovsky and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant Leslie Grisham.

Law Offices of Martin L. Louis and Martin L. Stanley for Plaintiff and Appellant Maria Cannata.

Munger, Tolles & Olson, Daniel P. Collins, Daniel B. Levin; Arnold & Porter and Murray R. Garnick for Defendant and Respondent Philip Morris U.S.A., Inc.

Jones Day, Elwood Lui, Peter N. Larson, Paul G. Crist; Sedgwick, Detert, Moran & Arnold, Frederick D. Baker, Ralph A. Campillo; and Maurice Leiter for Defendant and Respondent Brown & Williamson Holdings, Inc.

Daniel J. Popeo, Richard A. Stamp; Zacks Utrecht & Leadbetter and Paul F. Utrecht for Washington Legal Foundation as Amicus Curiae on behalf of Defendants and Respondents.

Hugh F. Young, Jr., and Harvey M. Grossman for The Product Liability Advisory Council, Inc., as Amicus Curiae on behalf of Defendants and Respondents.

OPINION

**MORENO, J.**—In the context of two lawsuits against tobacco companies by smokers Leslie J. Grisham and Maria Cannata, the Ninth Circuit Court of Appeals asks us to resolve two questions:[1] (1) For the purpose of the statute of limitations period applicable under California law to a personal injury action alleging injury arising from smoking tobacco, are persons presumed to have been aware by 1988 that smoking causes addiction and other health problems? If California law recognizes such a presumption, under what circumstances is it rebuttable? (2) Under California law, if a plaintiff seeks damages resulting from an addiction to tobacco, does an action for personal injury accrue when the plaintiff recognizes that he or she is addicted to tobacco, if the plaintiff has not yet been diagnosed with an injury stemming from tobacco use? (*Grisham, supra,* 403 F.3d at p. 633.)

The answers to these questions are better understood in the factual context in which these two cases arise. As will be explained below, Grisham essentially alleges two types of claims: one for physical injury in the form of respiratory and other ailments caused by smoking, and another for economic injury[2] that resulted from becoming addicted as a minor to cigarettes, and continually being compelled by the addiction to purchase them. As to this second type of claim, we conclude that although there is no reason to judicially create a special presumption of awareness that smoking cigarettes is addictive, a plaintiff who alleges that accrual of this cause of action is

---

[1] The first question was originally phrased by the Ninth Circuit as follows: "**Under California law, can a plaintiff overcome the presumed awareness that he or she knows that smoking causes addiction and other health problems, and so show justifiable reliance?**" (*Grisham v. Philip Morris U.S.A.* (9th Cir. 2005) 403 F.3d 631, 633 (*Grisham*).) The question was rephrased so as to more directly pertain to the statute of limitations question at issue in this case, and because we did not wish to be confined by the assumption of the above question that there is a "**presumed awareness that . . . smoking causes addiction and other health problems.**" (*Ibid.*)

[2] We note that although question 2 speaks in terms of "damages" for addiction, Grisham's claims for economic injury brought under the unfair competition law, Business and Professions Code section 17200 et seq. and the false advertising act (*id.,* § 17500 et seq.), seek disgorgement of defendant's profits and other equitable remedies. Compensatory damages are unavailable under these statutes. (See *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173–174 [96 Cal.Rptr.2d 518, 999 P.2d 706]; Bus. & Prof. Code, §§ 17203, 17535.)

delayed because of delayed discovery of her addiction must plead facts explaining the delay. As we shall see, Grisham's complaint admits actual or at least constructive knowledge that she was addicted to cigarettes long before filing the complaint.

We also conclude that, assuming Grisham's economic injury claim or claims are time-barred, that bar does not extend to her causes of action based on physical injury from smoking that manifested itself after the economic injury claim was or should have been discovered. We reject the proposition advanced by defendants, based on *Soliman v. Philip Morris Inc.* (9th Cir. 2002) 311 F.3d 966 (*Soliman*), that the statute of limitations should have commenced on the physical injury claims as soon as Grisham discovered or should have discovered she was addicted to cigarettes.

As also explained below, we conclude that Cannata has not alleged that her reliance on defendants' misrepresentations continued into the limitations period, although we express no opinion on the continuing viability of her conspiracy claim based on continuing wrong.

## I. FACTUAL BACKGROUND

The cases are in federal court via diversity jurisdiction, and arise from physical and monetary injuries suffered by plaintiffs Maria Cannata and Leslie Grisham as the alleged result of smoking cigarettes manufactured and marketed by defendants, Philip Morris U.S.A., Inc., and Brown & Williamson Tobacco Corporation. (Hereafter sometimes Philip Morris.) Both cases come to the Ninth Circuit on a motion to dismiss and, like the Ninth Circuit, we will assume the truth of the facts asserted in the complaints. (*Grisham, supra,* 403 F.3d at p. 634, fn. 5.)

### A. *Grisham's Complaint*

Grisham began smoking in 1962–1963 as a young teenager. At the time she began smoking, she was unaware of the increased risk of developing emphysema from smoking, or the increased risk of developing, as she did, persistent and chronic periodontitis and gingivitis. She was induced to start smoking by the advertising and representations of cigarette manufacturers, including defendants. (*Grisham, supra,* 403 F.3d at p. 634, fn. 5.)

Grisham attempted to quit smoking unsuccessfully on a number of occasions. One such occasion was during a period in 1993 and 1994. As she states in her complaint: "Plaintiff, while still smoking, joined Nicotine Anonymous, to help her overcome her nicotine addition. One suggestion plaintiff received was to give up her regular brand of cigarettes and switch to a less desirable brand of cigarettes that were not as satisfying, but were low in tars and nicotine. For several months, on the basis of that suggestion, plaintiff stopped smoking Merit 100's and began smoking Carlton's, which were advertised as lower in tars and nicotine. Plaintiff smoked Carlton cigarettes for approximately four to six months. Plaintiff then attempted, unsuccessfully, to quit smoking by obtaining a prescription for Nicorette gum. The Nicorette gum did not control the nicotine addiction and plaintiff began smoking again in mid-1994."

Grisham was diagnosed with the beginning stages of irreversible emphysema on or about March 28, 2001. Shortly thereafter, in April 2001, she was diagnosed with persistent and chronic periodontitis and gingivitis, leading to loss of teeth and facial disfigurement. She alleges that had she been aware of the true facts regarding the magnitude of the health risks and extent to which cigarettes were addictive, and that nicotine levels were manipulated by defendants and other cigarette manufacturers to foster the addiction, she would not have started smoking.

Grisham filed suit on March 15, 2002, within a year of her diagnosis for emphysema and persistent and chronic periodontitis and gingivitis. She alleged (1) negligence, (2) strict liability, (3) false representation, (4) deceit/fraudulent concealment, (5) unfair competition and business practices, (6) negligent false and misleading advertising, (7) intentional false and misleading advertising, (8) civil conspiracy and breach of express warranty.

Throughout her complaint, Grisham alleges that her addiction to cigarettes was a key link in the causal chain that led to her physical injuries. For example, in her civil conspiracy cause of action, she alleges that she "has now developed the irreversible beginning stages of emphysema, she has suffered from painful chronic and persistent periodontitis and gingivitis, as well as suffered alveolar bone loss which has led to the disfiguring loss of teeth, all of which was caused by plaintiff's addiction to smoking."

In at least one of Grisham's causes of action, however, she alleges that addiction caused not physical but economic injury. In her cause of action for "Unfair Competition/Unlawful Business Practices" she states: "As a result of the point of sale targeting of youth and minor smokers, at least 90% of adult smokers, including plaintiff, began purchasing the cigarettes to which they

became addicted while under the age of 18[,] [i]n reliance upon the representations and inducements of the point of sale targeting of minor smokers by the cigarette manufacturers, including defendants . . . ."

"As a result of the continuing course of conduct of the defendants, and each of them, as outlined above, defendants have been unjustly enriched from the years-long sales of addictive cigarettes, first to minors and youths, including plaintiff, to addict and ensure to the said defendants, and each of them, an ongoing flow of profits throughout the years, as the addicted smokers continued to purchase cigarettes. The true amount of unjust enrichment gained from the ongoing and continuing purchase of cigarettes by addicted smokers who began smoking as minors is as yet unknown to Plaintiff, who requests leave to amend this Complaint to conform to proof at the time of trial."

### B. *The Cannata Complaint*

Maria Cannata began smoking as a minor sometime before 1969. Cannata believed, and was induced to start smoking by, the representations of defendants that smoking did not cause emphysema, lung problems, cardioobstructive pulmonary disease, or any other problems. She states that "[b]ecause plaintiff began smoking before there was substantial public information concerning the negative effects of smoking, she justifiably relied on the misrepresentations put forth by the . . . defendants." The complaint further states that Cannata "just came to the realization that advertisements and cigarette company statements relating to safety of smoking were false."

Cannata further states that had she "known the true facts concerning the magnitude of the health risks of smoking, the addictive nature of nicotine, the intentional manipulation of nicotine levels in cigarettes, or the targeting of her and other youths like her to replace in the market those older cigarette smokers who were dying from smoking, she would never have started smoking. By the time plaintiff was aware that there were indeed deadly health risks associated with smoking, she was addicted, which addiction was maintained by the purposeful actions of cigarette defendants . . . ."

As a result of defendants' conduct, "plaintiff is dying and has suffered, and continues to suffer permanent injuries to the person, body and health, including but not limited to emphysema, shortness of breath, anatomical changes to her alveoli, and other lung damage. [She] has further suffered, continues to suffer, and will suffer in the future pain, discomfort, fears,

anxiety and other mental and emotional distress directly and proximately caused by" defendants' conduct. The complaint does not reveal when Cannata was diagnosed with the above injuries. Indeed, although her 50-page complaint alleges in detail the reprehensible and duplicitous conduct on the part of the various tobacco company defendants, it tells little more about plaintiff than is set forth immediately above.

Although Cannata alleges a number of different causes of action, she apparently agrees that her claims are time-barred if she cannot toll the statute of limitations by alleging defendants' ongoing conspiracy to defraud. (*Grisham, supra*, 403 F.3d at p. 635, fn. 6.)

### C. *Proceedings in the District Court*

The district court in the present case held that Grisham's claims were time-barred because, as explained below, under the Ninth Circuit's decision in *Soliman*, she was charged with constructive knowledge of the risks of smoking. Further, the court pointed to Grisham's admission that she tried to overcome her addiction in 1993 as evidence that she was aware of her injury at that time. The court determined that Grisham's subsequent physical injuries stemmed from the same tortious conduct that caused her addiction, and thus her causes of action based on those injuries were also time-barred. The court also found that Grisham's allegations of continuing wrong could not toll the statute of limitations because the presumption of awareness established in *Soliman* prevented a showing of justifiable reliance. The district court dismissed without prejudice Grisham's claims on behalf of third parties under the unfair competition law, Business and Professions Code section 17200 et seq.

A different district court determined that Cannata's claims were time-barred under California law. As noted, Cannata claimed that the applicable statutes of limitations were tolled by an alleged ongoing civil conspiracy. (See *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 786 [157 Cal.Rptr. 392, 598 P.2d 45] [holding that the statute of limitations does not begin to run until the last overt act pursuant to the conspiracy is completed].) The district court held that Cannata could not show an ongoing conspiracy to defraud because she could not show the essential element of justifiable reliance. (See *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511 [28 Cal.Rptr.2d 475, 869 P.2d 454] [holding that there is no separate cause of action for civil conspiracy, and that to establish such an action, a plaintiff must show some other underlying tort or civil wrong]); see also

*Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1151 [220 Cal.Rptr. 507] ["Justifiable reliance is an essential element of any cause of action for fraud and conspiracy to commit fraud."].) The district court considered dispositive the holding in *Soliman, supra,* 311 F.3d at page 975, that "California law presumes a plaintiff's awareness that smoking causes addiction and other health problems."

On appeal, the Ninth Circuit panel recognized that at least one Court of Appeal decision, upholding a fraud verdict for a cigarette smoker against defendants, criticized *Soliman*'s apparent holding that common knowledge of the harms of cigarette smoking would invariably defeat such a fraud action by negating the possibility of justifiable reliance. (See *Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 690–691 [11 Cal.Rptr.3d 807] (*Whiteley*).)[3] The court requested decisions from this court on the above issues (*Grisham, supra,* 403 F.3d at p. 633), and we granted its request.

## II. Discussion

Because each complaint requires a different analysis, we will address each complaint separately.

### A. *The Grisham Complaint*

#### 1. *Unfair Competition Cause of Action*

As noted, Grisham's cause of action for unfair competition/unfair business practices alleges that defendants targeted "youth and minor smokers" and that Grisham, relying on various representations and inducements of defendants' advertising, became addicted to cigarettes before the age of 18 years. As a result, "defendants have been unjustly enriched from the years-long sales of addictive cigarettes, first to minors and youths, including plaintiff, to addict and ensure to the said defendants, and each of them, an ongoing flow of profits throughout the years, as the addicted smokers continued to purchase cigarettes." The Ninth Circuit's first question, as rephrased by this court, is pertinent to this cause of action.[4] The question, again, is: "For the purpose of the statute of limitations period applicable under California law to a personal

---

[3] We note that shortly after the Ninth Circuit made its request, another decision of the California Court of Appeal came to a similar conclusion as *Whiteley* in upholding a fraud verdict against a tobacco company. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1666–1667 [26 Cal.Rptr.3d 638] (*Boeken*).)

[4] Several of Grisham's other causes of action include allegations of the same sort of economic injury in addition to allegations of physical injury. What is said in this opinion with respect to allegations of economic injury from addiction in Grisham's unfair competition cause of action applies as well to those portions of her other causes of action pertaining to such injury.

injury action alleging injury arising from smoking tobacco, are persons presumed to have been aware by 1988 that smoking causes addiction and other health problems? If California law recognizes such a presumption, under what circumstances is it rebuttable?"

■ "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.] An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.] [¶] A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806–807 [27 Cal.Rptr.3d 661, 110 P.3d 914] (*Fox*).)

As determined from the face of the complaint, plaintiff's unfair competition cause of action—based on the novel theory of economic injury from addiction—alleges her addiction was caused by defendants' marketing their products to young people such as she had been when she began smoking. She also alleges that defendants fraudulently concealed the danger and addictive nature of cigarettes and manipulated nicotine levels, all in order to induce a new generation of smokers to become addicted to smoking for defendants' profit.[5] Grisham alleges she was unaware she was addicted to cigarettes until after she contracted her serious tobacco-related diseases, and that this delayed discovery tolled her unfair competition cause of action.[6] If there is an unrebutted or unrebuttable presumption that by 1988, a plaintiff was aware that cigarettes were addictive, then this fact would go at least part of the way toward establishing that her complaint was time-barred.[7] Before addressing

---

[5] We express no opinion on whether Grisham's unfair competition cause of action based on economic injury from addiction is valid, under the unfair competition law or otherwise, or on whether this cause of action would be subject to dismissal on the pleadings on grounds other than the statute of limitations. These questions are beyond the scope of the Ninth Circuit's request.

[6] We discuss the statute of limitations issue solely in connection with claims asserted by Grisham individually. Grisham's injunctive relief claims and other claims on behalf of third parties are not before us and we express no opinion on the viability of such claims. (See *Grisham, supra*, 403 F.3d at p. 636, fn. 7.)

[7] We assume for purposes of this discussion that the delayed discovery rule applies to unfair competition claims. We note that this point is currently not settled under California law (compare *Snapp & Associates Ins. Services, Inc. v. Robertson* (2002) 96 Cal.App.4th 884, 891 [117 Cal.Rptr.2d 331] [discovery rule does not apply] with *Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1295 [119 Cal.Rptr.2d 190] [discovery rule "probably" applies]), and we do not address it.

arguments for and against such a presumption, it is useful to review the nature of evidentiary presumptions.

"A presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof." (Evid. Code, § 601.) "A presumption affecting the burden of producing evidence is a presumption established to implement no public policy other than to facilitate the determination of the particular action in which the presumption is applied." (Evid. Code, § 603.) "Typically, such presumptions are based on an underlying logical inference. In some cases, the presumed fact is so likely to be true and so little likely to be disputed that the law requires it to be assumed in the absence of contrary evidence." (Recommendation Proposing an Evidence Code (Jan. 1965) 7 Cal. Law Revision Com. Rep. (1965) p. 97.) On the other hand, "[a] presumption affecting the burden of proof is a presumption established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied . . . ." (Evid. Code, § 605.)

" ' "Conclusive presumptions are not evidentiary rules so much as they are rules of substantive law." [Citation.]' " (*People v. McCall* (2004) 32 Cal.4th 175, 185–186 [8 Cal.Rptr.3d 337, 82 P.3d 351].) Conclusive presumptions are primarily statutory in nature, although Witkin cites two long-standing common law conclusive presumptions that are still operative. (1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Assumptions, § 164, pp. 305–306.) We have also more recently recognized certain constitutionally mandated conclusive presumptions. (See *id.* at p. 306, citing *People v. Ortiz* (1990) 51 Cal.3d 975, 988 [275 Cal.Rptr. 191, 800 P.2d 547] [violation of defendant's right to counsel of choice per se reversible error].)

Although not entirely clear, Philip Morris appears to be arguing both for a conclusive presumption based on statute and, failing that, a rebuttable presumption shifting the burden of producing evidence because "the presumed fact is so likely to be true and so little likely to be disputed that the law requires it to be assumed in the absence of evidence to the contrary." (7 Cal. Law Revision Com. Rep., *supra*, at p. 97.)

In making the case for a statutorily based conclusive presumption, Philip Morris relies to a large extent on *Soliman*. As that court stated: "The California legislature acknowledged some time ago that the inherent risks of smoking are commonly known to the people of the state. In 1987, it enacted

an immunity statute that shielded manufacturers and sellers of tobacco products from liability for the commonly known risks of smoking. [Citation.] The California Supreme Court interpreted this statute in *Naegele v. R.J. Reynolds Tobacco Co.*[ (2002)] 28 Cal.4th 856 [123 Cal.Rptr.2d 61, 50 P.3d 769] . . . . The plaintiffs in that case alleged that the tobacco industry had 'lied about the addictive nature of smoking,' 'disseminate[d] deceptive . . . statements about the . . . addictive nature of cigarettes,' and 'control[led] the nicotine content of their cigarettes.' *Id.* at 865–66 . . . (internal quotation marks omitted). The court held that the immunity statute barred these claims, reasoning that '[t]hese allegations do not suggest that the cigarettes plaintiff smoked exposed him to dangers other than those inherent in cigarette smoking' of which the public had a 'general understanding.' *Id.* at 866 . . . (internal quotation marks omitted). The premise of the immunity statute was that 'certain products . . . are "inherently unsafe," but . . . the public wishes to have [them] available despite awareness of their dangers.' *Id.* at 862 . . . .

"Under California law, addiction is a commonly known risk of smoking and is therefore a danger of which a plaintiff is presumed to be aware. Because the immunity statute was repealed in relevant part in 1997, nicotine addiction claims are no longer categorically barred. [Citation.] But they are still subject to limitations. For precisely the same reason a plaintiff couldn't avoid the immunity statute by claiming ignorance of the risk of nicotine addiction, *Naegele*, [*supra*,] 28 Cal.4th at 866 . . . he can't now avoid the statute of limitations based on the same claim." (*Soliman*, *supra*, 311 F.3d at pp. 973–974, fns. omitted.)

■ We do not believe that the Legislature, which repealed the tobacco immunity statute (Stats. 1997, ch. 570, § 1), intended or intends for the repealed statute to be reincarnated, as it were, as a presumption of knowledge about the hazards of smoking that serves to disqualify tobacco lawsuits as time-barred. Indeed, the legislative history of the immunity repeal, recounted by the Court of Appeal in *Whiteley*, demonstrates that the immunity was withdrawn in part precisely because tobacco company misrepresentations had put into question the extent to which the public had received accurate information about the dangers of smoking. "The legislative history of the amendment refers to the grant of immunity in 1987 and observes, ' "Evidence has now become available showing tobacco companies may have deliberately manipulated the level of nicotine . . . to create and sustain addiction . . . [and] have systematically suppressed and concealed material information and waged an aggressive campaign of disinformation about the health consequences of tobacco use." ' (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 67 (1997–1998 Reg. Sess.) Apr. 8, 1997, pp. 1–2; Sen. Rules Com. 3d reading

analysis of Sen. Bill. No. 67 (1997–1998 Reg. Sess.), Apr. 16, 1997, p. 3.)" (*Whiteley, supra,* 117 Cal.App.4th at p. 690.) We conclude that this repealed statute does not serve as the basis of a conclusive presumption that a particular plaintiff who was a smoker was aware or should have been aware in 1988 that cigarettes were addictive or dangerous.

As to whether we should judicially recognize a rebuttable presumption, we first note that our statute of limitations law generally has not recognized special presumptions, conclusive or otherwise, based on some presumed state of common knowledge. The cases cited by Philip Morris in support of its position do not employ such presumptions, but stand for a quite different proposition: Evidence that information of a particular hazard has received widespread publicity may under some circumstances be a basis for granting summary judgment for defendants on statute of limitations grounds and for defeating a plaintiff's delayed discovery claim. (See, e.g., *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112–1113 [245 Cal.Rptr. 658, 751 P.2d 923]; *McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 162 [86 Cal.Rptr.2d 645].)[8]

■ Moreover, although knowledge of smoking addiction has been widespread, Grisham alleges, and other cases have found, that tobacco companies' misrepresentations of the danger and addictiveness of smoking were also widespread. (See *Whiteley, supra,* 117 Cal.App.4th 635, 690–691; *Boeken, supra,* 127 Cal.App.4th 1640, 1666–1667.) A defendant's fraud in concealing a cause of action against him will toll the statute of limitations, and that tolling will last as long as a plaintiff's reliance on the misrepresentations is reasonable. (See *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931 [30 Cal.Rptr.2d 440, 873 P.2d 613]; *Brown v. Bleiberg* (1982) 32 Cal.3d 426, 433–436 [186 Cal.Rptr. 228, 651 P.2d 815].) We cannot generalize about the precise point in time when reliance on the tobacco companies' misrepresentations became unreasonable. "[W]hether reliance was reasonable is a question of *fact* for the jury, and may be decided as a matter of law only if the facts permit reasonable minds to come to just one conclusion." (*Boeken,*

---

[8] We note that Code of Civil Procedure section 340.8, subdivision (c)(2), enacted in 2003, partly supersedes *McKelvey.* That subdivision provides: "Media reports regarding . . . hazardous material or toxic substance contamination do not, in and of themselves, constitute sufficient facts to put a reasonable person on inquiry notice that the injury or death was caused or contributed to by the wrongful act of another." (Code Civ. Proc., § 340.8, subd. (c)(2), added by Stats. 2003, ch. 873, § 1.) An uncodified portion of this legislation states that the Legislature intends to disapprove of *McKelvey* "to the extent the ruling in McKelvey is inconsistent" with the above subdivision. (Stats. 2003, ch. 873, § 2.) Amicus curiae Consumer Attorneys of California argues that the above section supports Grisham's argument that widespread media publicity about cigarettes should not necessarily preclude a plaintiff's delayed discovery argument. Because, as discussed below, Grisham pleads actual knowledge of her cigarette addiction, we have no occasion to decide what effect if any section 340.8, subdivision (c)(2) would have on the timeliness of her claims.

*supra*, 127 Cal.App.4th at p. 1666, original italics.) Where it is claimed that common knowledge undermines a plaintiff's claimed reasonable reliance on misinformation, " 'a fact-finder should examine the extent of common knowledge in comparison to the alleged convincingness of the misrepresentation. . . .' " (*Whiteley, supra,* 117 Cal.App.4th at pp. 684–685.)

■ We therefore reject *Soliman* to the extent that it holds that there is a special presumption under California law based on common knowledge that a plaintiff is aware that smoking is addictive or harmful. On the other hand, California law recognizes a general, rebuttable presumption, that plaintiffs have "knowledge of the wrongful cause of an injury." (*Fox, supra,* 35 Cal.4th at p. 808.) In order to rebut that presumption, " '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' " (*Ibid.*) Thus, if a plaintiff's cause of action depends upon delayed discovery of his or her addiction to tobacco in order to be timely, he or she must plead facts showing an inability to have discovered that addiction, such as reasonable reliance on tobacco company misrepresentations.

Grisham has not done so with respect to her unfair competition and related causes of action. On the contrary, as noted above, she stated in her complaint that in 1993 she "joined Nicotine Anonymous, to help her overcome her nicotine addiction." After experimenting with low-tar-and-nicotine cigarettes, the complaint states that she "then attempted, unsuccessfully, to quit smoking by obtaining a prescription for Nicorette gum. The Nicorette gum did not control the nicotine addiction and plaintiff began smoking again in mid-1994. Plaintiff continued to smoke until April 8, 2001."[9]

Grisham argues before us that in fact she did not realize she was addicted to cigarettes even when she joined Nicotine Anonymous and failed to quit smoking—that she only joined to appease her family and still believed that she could quit at will if she wanted to. Assuming this to be correct, we conclude Grisham at the very least had reason to suspect that she was

---

[9] This portion of the opinion is particularly responsive to a footnote in the Ninth Circuit's opinion in *Grisham* in which the Ninth Circuit asked for additional clarification from this court as follows: "It may also be helpful for the court to address the effect of an admission by a plaintiff that he or she is aware of an addiction to tobacco more than a year before filing suit. Grisham alleges awareness of her addiction to tobacco in 1993. If the presumption identified in *Soliman* is rebuttable, it may be helpful for the court to address whether this awareness prevents rebuttal of the presumption as a matter of law, such that reliance on defendants' representations would no longer be justifiable." (*Grisham, supra,* 403 F.3d at p. 633, fn. 3.)

addicted to cigarettes at this point, and therefore had reason to discover that part of her unfair competition cause of action. (See *Fox*, *supra*, 35 Cal.4th at p. 807.)

 We therefore conclude from the face of the complaint that Grisham knew or should have known of her tobacco addiction and the economic injury it was causing her by at least 1993–1994, outside the limitations period. (Bus. & Prof. Code, § 17208 [unfair competition law claim must be brought within four years of accrual].)[10]

### 2. *Timeliness of Grisham's Physical Injury Claims*

As noted, Grisham's other claims involve primarily physical rather than economic injury. Although denominated under various headings such as fraud, negligence, strict liability, and breach of warranty, these claims all allege that cigarette smoking caused various serious ailments, including emphysema and persistent and chronic periodontitis and gingivitis. Suit was filed within a year of the diagnosis of those ailments, and nothing on the face of the complaint appears to suggest that these claims are time-barred. In these claims, her addiction, although potentially harmful, is not alleged to have manifested appreciable physical harm until Grisham contracted a serious physical ailment.

Philip Morris nonetheless argues that all of Grisham's causes of action are time-barred, inasmuch as all her causes of action began to accrue at the point she discovered that she was addicted to cigarettes. Philip Morris relies on *Soliman*. In that case, the plaintiff was diagnosed in January 2000 with two respiratory ailments attributable to smoking, dyspnea and orthopnea, after having smoked cigarettes for 32 years. He filed his complaint in March 2000, and it was eventually removed to the federal court, which dismissed his complaint on statute of limitations grounds. (*Soliman*, *supra*, 311 F.3d at pp. 969–972.) The plaintiff argued before the Ninth Circuit that the statute should have begun to run when he was diagnosed with respiratory ailments in January 2000. The *Soliman* court rejected this position: "The relevant date . . . is not when Soliman knew about these particular injuries, but when he should have known of *any* significant injury from defendants' wrongful conduct . . . ." (*Id.* at p. 972.)

---

[10] In so concluding, we express no opinion as to whether Grisham's unfair competition cause of action might still survive the statute of limitations bar based on her contention that she did not discover until recently, and did not reasonably suspect, defendants' alleged wrongful business practices of targeting minors through fraudulent marketing practices and manipulation of nicotine levels in cigarettes. This question is beyond the scope of the questions asked of us by the Ninth Circuit.

In support, the *Soliman* court quoted California cases. " '[I]f the statute of limitations bars an action based upon harm immediately caused by defendant's wrongdoing, a separate cause of action based on a subsequent harm arising from that wrongdoing' is normally barred. *Miller v. Lakeside Vill. Condo. Ass'n*[ (1991)] 1 Cal.App.4th 1611, 1622 [2 Cal.Rptr.2d 796] . . . . '[A]lthough a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period.' *Davies v. Krasna*[ (1975)] 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161] . . . ." (*Soliman, supra,* 311 F.3d at p. 972, citation omitted.) The court then stated that "Soliman alleges that he suffered a number of significant injuries from the cigarettes he smoked. The injury he should have known about first is the one that starts the statute of limitations." (*Ibid.,* fn. omitted.)

The *Soliman* court then concluded that the injury from addiction was the one the plaintiff should have known about first. Although recovery of damages for addiction alone was a "novel" theory of recovery, the *Soliman* court concluded it need not decide whether the theory was valid, "because Soliman can't claim that his addiction is an appreciable injury and, at the same time, ask us to ignore it in determining when his claim accrued. If Soliman had actual or constructive knowledge of his addiction before he was diagnosed with respiratory illness, the date of actual or constructive knowledge of addiction would govern." (*Soliman, supra,* 311 F.3d at p. 973; see also *Spain v. Brown & Williamson Tobacco Corp.* (Ala. 2003) 872 So.2d 101, 114–115 [agreeing with *Soliman* that the statute of limitations on all claims by smokers against tobacco companies begins to run when addiction is or should have been discovered].) The *Soliman* court then concluded, for reasons discussed in part in the previous part of this opinion, that Soliman did have constructive knowledge of addiction and that therefore all his claims were barred.

Philip Morris takes essentially the same position. It does *not* argue that Grisham would have had a viable cause of action when she discovered, or reasonably should have discovered, her addiction to cigarettes. Nor does it argue that we should recognize a cause of action against a company that causes an individual to become addicted to its products, independent of any physical injury resulting from use of the product. Rather, its position, as stated in its answer brief in this court, is that "[w]here a plaintiff alleges that addiction is a serious, severe, and/or incapacitating condition that caused appreciable injury, actual or constructive knowledge of addiction will trigger the statute of limitations, and under the single-injury rule all smoking-related claims that accrue, even if the plaintiff has not yet been diagnosed with other illnesses stemming from tobacco use."

Because Philip Morris's argument that knowledge of addiction should trigger the statute of limitations is based on Grisham's allegations that her addiction caused appreciable harm that predated her diagnosis with serious tobacco-related illnesses, our starting point in evaluating that argument must be to understand precisely what kind of appreciable harm Grisham is alleging. As noted in the previous part of this opinion, the alleged injury from addiction that predated the 2001 diagnosis was economic in nature: Grisham was allegedly compelled by the addiction to devote a steady stream of her income to the purchase of cigarettes. We do not read Grisham's complaint as alleging an appreciable physical harm from addiction prior to 2001.[11] The question then is whether, assuming Grisham had discovered or should have discovered a viable unfair competition cause of action based on economic injury from addiction long before she was diagnosed with serious physical ailments, the statute of limitations began to run at that point of discovery on both her physical injury and economic injury causes of action. The argument that all her causes of action are time-barred is based on the rule against splitting a cause of action, and in order to evaluate that argument, a discussion of this rule is in order.

■ "The longstanding rule in California . . . is that '[a] single tort can be the foundation for but one claim for damages.' " (*DeRose v. Carswell* (1987) 196 Cal.App.3d 1011, 1024, fn. 5 [242 Cal.Rptr. 368] (*DeRose*).) This rule is a corollary of the primary right theory found in California law. As we have explained: "The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] A pleading that states the violation of one primary right in two causes of action contravenes the rule against 'splitting' a cause of action." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 681 [34 Cal.Rptr.2d 386, 881 P.2d 1083] (*Crowley*).)

---

[11] We assume for purposes of discussion, without deciding, that the economic costs of addiction can be considered an "appreciable and actual harm" for statute of limitation purposes. (*Davies v. Krasna, supra*, 14 Cal.3d at p. 514.) We also note that Philip Morris cites the portion of Grisham's complaint in which she states that she has "undergone costly nicotine replacement therapy to assist in her breaking her nicotine addiction" as an indication that Grisham has pleaded appreciable physical injury caused by that addiction occurring before 2001. But Grisham's various pre-2001 efforts to break her nicotine addiction do not amount to an allegation that the addiction was causing her appreciable physical harm, nor that the addiction itself was actionable, other than as a cause of economic injury. Grisham's complaint does not allege appreciable physical injury until discovery of her physical ailments in 2001.

As we further explained: "The primary right theory has a fairly narrow field of application. It is invoked most often when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement (Code Civ. Proc., § 430.10, subd. (c); [citation]); or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata [citation]." (*Crowley*, *supra*, 8 Cal.4th at p. 682.)

■ The cases have invoked the rule against splitting causes of action in order to abate a later suit or bar it on res judicata grounds when that suit alleged a different theory of recovery for the same injury (see, e.g., *Wulfjen v. Dolton* (1944) 24 Cal.2d 891 [151 P.2d 846]; *Savage v. Emery* (1967) 255 Cal.App.2d 603 [63 Cal.Rptr. 566]), or a different remedy for the same injury (see, e.g., *Hatch v. Bank of America* (1960) 182 Cal.App.2d 206 [5 Cal.Rptr. 875]; *McCaffrey v. Wiley* (1951) 103 Cal.App.2d 621 [230 P.2d 152]), or a somewhat greater factual elaboration of the same injury (see, e.g., *McCloskey v. Carlton Builders* (1985) 165 Cal.App.3d 689 [211 Cal.Rptr. 659]; *Wick v. Wick Tool Co.* (1959) 176 Cal.App.2d 677 [1 Cal.Rptr. 531]).

The rule against splitting a cause of action is distinct from the rule, discussed above, that "the infliction of appreciable and actual harm, however uncertain in amount, will commence" the running of the statute of limitations. (*Davies v. Krasna*, *supra*, 14 Cal.3d at p. 514.) "The rule against splitting a cause of action is neither an aspect, nor a restatement, of the statute of limitations; rather, it is in part a rule of *abatement* and in part a rule of *res judicata*." (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1146 [95 Cal.Rptr.2d 701, 998 P.2d 403] (*Hamilton*).) These two rules may intersect, however, when a single wrongdoing gives rise to two or more different injuries, manifesting at different times, raising the question whether the two injuries are invasions of two different primary rights. Some courts have held that the earlier injury, even if less serious than the later injury, sets the statute running as to both injuries, and expiration of the statute on the earlier injury bars a suit on the later one. (See *Miller v. Lakeside Village Condominium Assn.*, *supra*, 1 Cal.App.4th at p. 1622; *DeRose*, *supra*, 196 Cal.App.3d 1011, 1024, fn. 5.) Other courts have found that, under various theories, suit on a later manifesting injury was not time-barred even when suit on the earlier injury would be. (*Zambrano v. Dorough* (1986) 179 Cal.App.3d 169, 174 [224 Cal.Rptr. 323]; see *Martinez-Ferrer v. Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316, 326–327 [164 Cal.Rptr. 591].)

Amicus curiae for Grisham cites a number of out-of-state cases holding that distinct injuries manifesting at different times caused by the same exposure to or ingestion of a toxic substance can give rise to more than one cause of action.[12] We confronted the same issue in *Hamilton, supra,* 22 Cal.4th 1127, in which the plaintiff alleged that mesothelioma is a separate and distinct injury from asbestosis, although both were caused by the same exposure to asbestos, and that therefore accrual of a cause of action for one of these injuries does not commence the running of the statute of limitations on the other. The majority never addressed the question whether the plaintiff had a separate primary right to be free of each of the two diseases; instead, the court resolved the issue on statutory grounds, concluding that under the special statute of limitations for asbestos victims, Code of Civil Procedure section 340.2, which commences with the date of disability, neither cause of action was time-barred. (*Hamilton, supra,* 22 Cal.4th at pp. 1144–1145.) Justice Brown in her concurring opinion would have resolved the issue by holding that mesothelioma and asbestosis injuries formed the basis for two separate and distinct causes of action. (*Id.* at p. 1150 (conc. opn. of Brown, J.).)

We need not resolve whether and under what circumstances two different physical injuries arising out of the same wrongdoing can give rise to two separate lawsuits, or whether the two injuries in the present case can be conceived of as invading two different primary rights. Here, what is alleged are two different types of injury, one serious physical injury or injuries, the other an economic injury, giving rise to two different types of action. The economic injury was a more or less immediate result of Grisham's addiction to cigarettes, whereas her physical injuries occurred after many years of smoking. The addictiveness of a product is distinct from its capacity to cause serious physical injury, as demonstrated by the fact that other addictive products are not associated with the same harmful consequences. (See Juliano & Griffiths, *Is Caffeine a Drug of Dependence?* (Feb. 2001) Psychiatric

---

[12] See, e.g., *Nicolo v. Phillip Morris, Inc.* (1st Cir. 2000) 201 F.3d 29, 35–36, 38–39; *Golod v. Hoffman La Roche* (S.D.N.Y. 1997) 964 F.Supp. 841, 850–851; *Sackman v. Liggett Group, Inc.* (E.D.N.Y. 1996) 167 F.R.D. 6, 14. The above rule has been commonly recognized in asbestos cases. (See, e.g., *Wilson v. Johns-Manville Sales Corp.* (D.C. Cir. 1982) 684 F.2d 111 [221 U.S. App. D.C. 337]; *Miller v. Armstrong World Industries* (Colo. 1991) 817 P.2d 111; *Sheppard v. A.C. & S. Co.* (Del.Super.Ct. 1985) 498 A.2d 1126; *Wilber v. Owens-Corning Fiberglass Corp.* (Iowa 1991) 476 N.W.2d 74; *Giffear v. Johns-Manville Corp.* (1993) 429 Pa.Super. 327 [632 A.2d 880]; *Sopha v. Owens-Corning Fiberglas Corp.* (1999) 230 Wis.2d 212 [601 N.W.2d 627]; *Pustejovsky v. Rapid-American Corp.* (Tex. 2000) 35 S.W.3d 643 [44 Tex. Sup. Ct. J. 89].) The rule also has been applied in other toxic exposure cases involving latent injuries. (See *Braune v. Abbott Laboratories* (E.D.N.Y. 1995) 895 F.Supp. 530, 567–568; *Colby v. E.R. Squibb & Sons, Inc.* (D.Kan. 1984) 589 F.Supp. 714, 716–717.)

Times <http://psychiatrictimes.com/p010247.html> [as of Feb. 15, 2007] [caffeine documented as commonly creating significant physical and psychological dependence].)

Philip Morris cites no authority, and we have found none, for the proposition that the rule that the statute of limitations commences with the infliction of appreciable injury bars suits based on a later manifesting injury of a different type. (See, e.g., *Davies v. Krasna, supra*, 14 Cal.3d at p. 514 [statute of limitations commences when plaintiff incurred earlier economic injury based on intellectual property theft, not later injury of the same type]; *Miller v. Lakeside Village Condominium Assn., supra*, 1 Cal.App.4th at p. 1622 [plaintiff cannot sue on later developed physical injuries when earlier physical injuries are appreciable]; *DeRose, supra*, 196 Cal.App.3d 1011, 1024, fn. 6 [recovery for intentional infliction of emotional distress based on later developed emotional injury from childhood sexual assault barred when original injury could have given rise to the same cause of action].) Indeed, *Davies v. Krasna*, which first announced the appreciable harm rule, was concerned that a plaintiff not delay bringing an action until there was "a more certain proof of damages" (*Davies v. Krasna, supra*, 14 Cal.3d at p. 515), and did not address whether an appreciable injury would bar a suit based on a later discovered injury of a different type.

We decline to extend the appreciable harm rule to the circumstances of this case, when there is an earlier manifesting economic injury and a later manifesting physical injury, because such an extension would be inconsistent with the discovery rule. In *Fox, supra*, 35 Cal.4th 797, we faced a similar issue. The plaintiff in *Fox* suffered serious complications after gastric bypass surgery. She sued the surgeon and hospital for medical malpractice. In the course of discovery, the plaintiff learned that the complications may have been due in part to a defective stapler manufactured by defendant Ethicon. The plaintiff amended her complaint to add Ethicon as a defendant and to add a products liability cause of action, and Ethicon demurred on statute of limitations grounds. We upheld the Court of Appeal's reversal of the trial court's order sustaining the demurrer, holding that discovery and accrual of the medical malpractice cause of action did not necessarily mean discovery that the products liability action had accrued.

In so ruling, we rejected the holding in *Bristol-Myers Squibb Co. v. Superior Court* (1995) 32 Cal.App.4th 959, 966 [38 Cal.Rptr.2d 298], that "[w]hen a plaintiff has cause to sue based on knowledge or suspicion of negligence the statute starts to run as to *all* potential defendants," regardless of whether those defendants are alleged to be wrongdoers in a different cause of action. One of the reasons for our rejection was that "[i]t would be contrary to public policy to require plaintiffs to file a lawsuit 'at a time when the evidence

available to them failed to indicate a cause of action.' [Citations.] Were plaintiffs required to file all causes of action when one cause of action accrued, as they would be under the *Bristol-Myers Squibb* rule, they would run the risk of sanctions for filing a cause of action without any factual support. [Citations.] Indeed, it would be difficult to describe a cause of action filed by a plaintiff, before that plaintiff reasonably suspects that the cause of action is a meritorious one, as anything but frivolous. At best, the plaintiff's cause of action would be subject to demurrer for failure to specify supporting facts (see, e.g., 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 339, p. 436 [requirement of pleading facts]). In sum, the interest of the courts and of litigants against the filing of potentially meritless claims is a public policy concern that weighs heavily against the *Bristol-Myers Squibb* formulation of the discovery rule." (*Fox, supra,* 35 Cal.4th at p. 815.)

In the present case the rule proposed by Philip Morris, like the *Bristol-Myers Squibb* rule we rejected in *Fox,* would compel cigarette smokers either to file groundless tort causes of action based on physical injury against tobacco companies as soon as they discovered they were addicted to cigarettes and had an unfair competition cause of action (again, assuming such a cause of action exists), or risk losing their right to sue in tort for such physical injury. This rule would violate the essence of the discovery rule that a plaintiff need not file a cause of action before he or she " 'has reason at least to suspect a factual basis for its elements.' [Citations.]" (*Fox, supra,* 35 Cal.4th at p. 807.) It would directly contravene "the interest of the courts and of litigants against the filing of potentially meritless claims." (*Id.* at p. 815.) Indeed, Philip Morris nowhere argues that tobacco addiction inevitably or even probably leads to serious physical ailments. (See, e.g., Lung Cancer and Smoking Statistics—risk and life expectancy, Cancer Research UK, <http://info.cancerresearchuk.org/cancerstats/types/lung/smoking/> [as of Feb. 15, 2007] [the cumulative risk of dying of lung cancer by age 75 for a male lifelong smoker is 15.9 percent].)

Philip Morris contends that *Fox* is distinguishable because it involved misconduct by two different defendants. But this distinction was not a basis for our ruling. (*Fox, supra,* 35 Cal.4th at p. 807 [failure to discover the identity of the second defendant does not toll statute of limitations].) *Fox's* basic rationale—that the discovery of one cause of action does not necessarily mean plaintiff should have discovered the factual basis for a qualitatively different type of action—is fully applicable in the present case. If anything, its application has greater force here, where, unlike in *Fox,* the injury that was the crucial element of the later suit had not yet manifested at the time the earlier cause of action accrued.

We therefore conclude that Grisham's discovery of her alleged unfair competition cause of action and related causes of action for economic injury

based on smoking addiction did not start the statute of limitations running on her tort causes of action based on later discovered appreciable physical injury. Rather, these latter causes of action did not begin to accrue until the physical ailments themselves were, or reasonably should have been, discovered. We leave for another day the question of whether and under what circumstances two physical injuries with different manifestation periods arising out of the same wrongdoing can be the legitimate basis for two different lawsuits.

## B. *The Cannata Complaint*

As discussed in the statement of facts (pt. I.B., *ante*), Cannata states that "[b]ecause plaintiff began smoking [in 1969] before there was substantial public information concerning the negative effects of smoking, she justifiably relied on the misrepresentations put forth by the . . . defendants" and that she "just came to the realization that advertisements and cigarette company statements relating to safety of smoking were false." Had she "known the true facts concerning the magnitude of the health risks of smoking, the addictive nature of nicotine, the intentional manipulation of nicotine levels in cigarettes, or the targeting of her and other youths like her to replace in the market those older cigarette smokers who were dying from smoking, she would never have started smoking. By the time plaintiff was aware that there were indeed deadly health risks associated with smoking, she was addicted, which addiction was maintained by the purposeful actions of cigarette defendants . . . ."

Unlike Grisham, Cannata does not plead that she discovered her serious physical injury within the limitations period, and the Ninth Circuit appears to presume that her action can only survive if she has successfully alleged an ongoing conspiracy to defraud, which would include an allegation that her justifiable reliance on defendants' misrepresentations continued into the limitations period. (*Grisham, supra*, 403 F.3d at p. 635 & fn. 6.) Assuming that Cannata adequately pleaded that she justifiably relied on tobacco company misrepresentations when she began smoking in 1969, however, at some point that is unknown from the face of the complaint, her justifiable reliance ended. She does not allege with any specificity that her justifiable reliance in the present case terminated within the limitations period. (See *Fox, supra*, 35 Cal.4th at p. 808 [specific facts regarding delayed discovery must be pleaded].) Consequently, Cannata has not adequately pleaded that the fraud continued into the limitations period. Whether she should be permitted to amend her pleadings, or whether she can maintain a conspiracy action based on the wrongful conduct of defendants even after the fraud was discovered (see *Wyatt v. Union Mortgage Co., supra*, 24 Cal.3d at p. 788), is beyond the scope of the questions asked by the Ninth Circuit.

## III. Conclusion

█ We conclude there is no special presumption that smokers are aware of the addictiveness or health hazards of smoking, but there is a general, rebuttable presumption that a plaintiff has knowledge of the wrongful cause of his or her injury. Here Grisham has failed to plead specific facts justifying the delay in discovering her smoking addiction. The fact that the unfair competition claim based on her economic injury from addiction may be barred, however, does not mean that Grisham's other claims, based on physical injury, are also barred. Cannata does not adequately allege that her justifiable reliance on defendants' misrepresentations continued into the limitations period.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.