# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2204

_____

In re: Mirapex Products Liability Litigation

------------------------------

Marc Mancini

*Plaintiff - Appellant*

v.

Boehringer Ingelheim Pharmaceuticals, Inc., et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 16, 2018
Filed: January 10, 2019

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

LOKEN, Circuit Judge.

Mirapex is a dopamine agonist that is FDA-approved for treating adults with Parkinson's disease and movement disorders. On December 30, 2010, Marc Mancini

filed this action against the defendant pharmaceutical companies, alleging they are liable for substantial gambling and other financial losses that resulted from obsessive compulsive behavior, a side effect of taking Mirapex. The action was filed in the District of Minnesota as part of the multi-district Mirapex Products Liability Litigation. Mancini appeals the district court's[1] grant of summary judgment dismissing all claims as barred by the applicable California statute of limitations. He argues the district court erred in not tolling the statute of limitations because he was "insane" and in rejecting his "continuing violations" theory, issues we review *de novo*, and abused its discretion in denying his motion to stay defendants' motion for summary judgment pending discovery. We affirm.

## I. Background.

Mancini is a resident of California and a successful educator and travel industry speaker and consultant. In June 2004, doctors noted symptoms consistent with mild idiopathic Parkinson's disease. In January 2006, Dr. Mark Lew, Mancini's treating neurologist, prescribed Mirapex to treat worsening symptoms.

On January 3, 2008, Mancini reported to Dr. Lew that he experienced increased gambling and other compulsive behaviors after taking Mirapex. Dr. Lew's notes stated that Mancini reported "gambling and winning but not excessively." Dr. Lew informed Mancini of a possible association between Mirapex and compulsive behaviors such as gambling. On April 23, 2008, Mancini again reported gambling and other compulsive behaviors. Dr. Lew's notes from this visit stated that Mancini "has increasing stress at work" and "has become a bit more compulsive." "He tells me that this is controlled, and he does not have any significant problems," Dr. Lew

---

[1] The Honorable Michael J. Davis, United States District Judge for the District of Minnesota, adopting the report and recommendations of the Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

wrote, "but with the stress, he has noted the compulsions to be a bit more intense. On occasion he . . . described it as 'driving a car without brakes.'" Dr. Lew told Mancini he had "substantial and significant concerns" about Mancini's gambling and impulsive behavior. "We talked about the potential of simply cutting back on his Mirapex . . . . Currently he is quite resistant to this. He will return to see me in 3 months' time."

Mancini continued to take Mirapex until mid-July 2010, when his family learned of substantial debts resulting from gambling. Three days after stopping Mirapex, Mancini saw Dr. Lew, who noted worsening tremors but advised that Mancini "needs to stay off his Mirapex" and turn to other "therapeutic options." Dr. Lew's notes stated that "every visit I have had since [Mancini] has been on Mirapex for better than 5 years, we discuss[ed] the potential for compulsive behaviors, and he flat out denied any significant problem."

## II. Discussion.

In reviewing whether Mancini's claims are time-barred, important issues are not disputed. The parties agree that California law governs the statute of limitations issue, and that California's two year statute of limitations for personal injury claims resulting from the ingestion of pharmaceutical drugs applies. See Cal. Code Civ. P. §§ 335.1, 340.8(a). The district court found, and Mancini does not dispute on appeal, that his claims initially accrued no later than April 23, 2008, because he suspected or should have suspected that he had been wronged by defendants as a result of his visits to Dr. Lew in January and April 2008. Thus, the claims filed in December 2010 appear to be time-barred. But Mancini argues the district court erred in granting summary judgment because the statute of limitations was tolled until July 2010, and because continuing violations are not time-barrred.

-3-

**A.  The Tolling Issue.**  As relevant here, section 352(a) of the California Code of Civil Procedure provides that, "[i]f a person entitled to bring an action . . . is, at the time the cause of action accrued . . . insane, the time of the disability is not part of the time limited for the commencement of the action."[2]  Consistent with the statute's plain language, it applies even if the plaintiff's insanity is caused by the wrongful act of the defendant.  See Feeley v. S. Pac. Transp. Co., 285 Cal. Rptr. 666, 667 (Cal. App. 1991).  Thus, if Mancini was "insane" within the meaning of § 352(a) when his claim accrued in early 2008, the two-year statute of limitations would be tolled, presumably until he stopped taking Mirapex in July 2010.  Mancini argues the district court erred in granting defendants summary judgment on this issue.

The statute, first enacted in 1872, does not define the word "insane."  In an early case, the Supreme Court of California affirmed a jury verdict that the plaintiff was insane when the cause of action accrued:

> It is true that the complaint and findings . . . do not use the words "unsound" or "insane," but the finding that he was incapable of caring for his property or transacting business or understanding the nature or effects of his acts was equivalent to a finding in express terms that the deceased was insane within the meaning of the statute of limitations.

Pearl v. Pearl, 177 P. 845, 846 (Cal. 1918).  Many years later, in the leading case of Hsu v. Mt. Zion Hospital, 66 Cal. Rptr. 659, 664-67 (Cal. App. 1968), the California Court of Appeal affirmed a jury verdict that plaintiff's claims were time-barred because she was not "insane" when the claims accrued, even though she was

---

[2] In 2014, the California Legislature amended § 352(a) to replace the term "insane" with the phrase "lacking the legal capacity to make decisions."  2014 Cal. Stat. ch. 144, § 4.  Courts continue to rely on pre-2014 case law in interpreting the amended statute.  See, e.g., Lang v. Sacramento Sheriff Dep't, No. 2:14-cv-0777, 2017 WL 1093838, at *2 (E.D. Cal. Mar. 23, 2017).

committed to a state hospital for the mentally disturbed shortly after the incident. The jury was instructed that, "to find that plaintiff was insane, you must find that she was incapable of caring for her property, or transacting business or understanding the nature or effects of her acts." Id. at 666. The Court of Appeal ruled that this instruction "is taken directly from Pearl v. Pearl . . . and is a definition of insanity recognized by [other Court of Appeal] decisions." Id. The Court further explained:

> The cases cited above, such as Pearl . . . do not purport to hold that this language is the sole definition of insanity or that the three conditions there set forth are the exclusive tests of mental incompetence for purposes of tolling the statute of limitations. As we understand these cases, <u>the basic question</u> to be resolved by the jury <u>is whether the allegedly insane plaintiff is sufficiently aware of the nature or effects of his acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action</u>.

Id. (emphasis added). The Court concluded that the claim was time-barred because the jury reasonably found that the statute of limitations began to run when plaintiff "was released from the hospital, managed a sixteen-unit apartment building, and took care of her two minor children during March through May 1959." Id.

In this case, undisputed evidence established that, when his cause of action accrued in early 2008, Mancini was a full-time college professor, serving as the chair of his department. He earned $57,800 from speaking engagements in 2008, $7,600 before April. He owned and operated two rental properties. He had never been diagnosed with or treated for mental illness or psychological disorder. Mancini reported his gambling and other compulsive behaviors to Dr. Lew in January and April 2008. Dr. Lew advised that this behavior may be a side effect of taking Mirapex and suggested Mancini consider "cutting back," a suggestion he "resisted" for more than two years. At no point did Dr. Lew question Mancini's competence to

care for himself or manage his affairs, nor is there evidence that anyone questioned his legal competence.

Mancini relies on two documents to support his claim of insanity. First, when Mancini visited Dr. Lew two weeks after he stopped taking Mirapex and over two years after his cause of action accrued. Dr. Lew's visit notes reported:

> [Mancini] is dramatically insightful into the problems that have evolved over the last several years. He feels that he was somewhat disconnected from the potential effects of his actions while he was taking Mirapex. At that time . . . he covered his activities and did not confide in his significant other, and basically lied to me each time I asked him about how he was doing. This was all related to his lack of insight caused by behavioral changes from his Mirapex . . . . He appears today to be dramatically improved with regard to his insight and understanding of his compulsions and behavioral change. He appears to be much more firmly based in reality today.

Second, Mancini submitted a December 2012 affidavit averring that, while taking Mirapex, he was "not firmly based in reality, lacked insight into [his] actions, was disconnected from reality, was incapable of transacting business in a competent manner and generally could not understand or appreciate the nature, effects or consequences of [his] acts." The affidavit listed ways his gambling and "unreliable behavior" had injured client relations, hastened his retirement as a college professor, "tarnished my reputation as a speaker," and caused him to make a poor investment in June 2007 without his customary "exhaustive research and due diligence."

The district court concluded that the July 2010 opinion of Dr. Lew, who was a treating neurologist, not a psychiatrist, and the assertions in Mancini's affidavit failed to meet his burden of showing that he was insane *at the time his cause of action accrued*. "The court concludes that no reasonable jury could find that Mancini was incapable of caring for his property, transacting business, or understanding the nature

-6-

or effects of his acts in January or April 2008." After careful review of the summary judgment record, we agree. Mancini must provide more than a scintilla of evidence to carry his burden. Nuacke v. City of Park Hills, 284 F.3d 923, 927 (8th Cir. 2002). The undisputed evidence of his business and financial success well into 2008, his contemporaneous recognition of increasingly compulsive behaviors, and his understanding from Dr. Lew that taking Mirapex may be their cause, establish that he was not insane when the cause of action accrued because he was "sufficiently aware of the nature or effects of his acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action." Hsu, 66 Cal. Rptr. at 666; see also Gazal v. Boehringer Ingelheim Pharm., Inc., 647 F.3d 833, 840 (8th Cir. 2011) (concluding that a similar tolling provision in the Texas Civil Practice and Remedies Code did not apply because plaintiff managed a profitable company and sought treatment for the side effects of Mirapex, and no one questioned his competence to care for himself); Sommer v. UNUM Life Ins. Co. of Am., 173 F.3d 861 (table), 1999 WL 173570 at *1 (9th Cir. Mar. 24, 1999) (plaintiff's "own actions, continued employment, and substantial income indicate that he was not 'insane'").

**B. The Continuing Violations Issue.** Mancini next argues that each ingestion of Mirapex gives rise to a separate and distinct claim. Therefore, even if the statute of limitations initially accrued in early 2008 and was not tolled by insanity, damages for injuries suffered due to dosages of Mirapex taken within two years of December 30, 2010, are not barred by the statute of limitations. In effect, he argues that taking each dose of Mirapex gave rise to nearly 5,000 distinct and separate claims against defendants from January 2006 to July 2010. We agree with the district court that this counter-intuitive argument is without merit.

"The longstanding rule in California is that a single tort can be the foundation for but one claim for damages." Grisham v. Phillip Morris U.S.A., Inc., 151 P.3d 1151, 1161 (Cal. 2007) (cleaned up). However, the Supreme Court of California, like

other jurisdictions, has adopted what it calls a "continuing accrual" principle that it applies to breaches of continuing or recurring obligations:

> When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period. Because each new breach of such an obligation provides all the elements of a claim -- wrongdoing, harm, and causation -- each may be treated as an independently actionable wrong with its own time limit for recovery.

Aryeh v. Canon Bus. Sols., Inc., 292 P.3d 871, 880 (Cal. 2013) (citations omitted). We have applied the same principle under federal law, calling it a "continuing violations" doctrine and noting that "[t]he critical question is whether a present violation exists." Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 168 (8th Cir. 1995) (en banc) (emphasis in original), quoting United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977).

Though Mancini invoked this principle in arguing to the district court and on appeal, he failed to identify what present, ongoing violation existed after his cause of action accrued. His claims are based on the theory that defendants' failure to adequately warn him of the behavioral side effects of taking Mirapex led to compulsive gambling and financial ruin. Mirapex was FDA-approved for treating Parkinson's disease, and was prescribed by Mancini's treating neurologist for this purpose. Thus, as the district court observed when the summary judgment motion was argued, "here, the wrongdoing isn't taking the pill."

In these circumstances, it is logical to conclude there was a single wrongdoing that ended -- accrued -- in early 2008 when Mancini learned that his compulsive behaviors may have been caused by taking Mirapex. He presented no evidence or argument refuting that conclusion. Thus, though his alleged injuries increased when he persisted in voluntarily taking Mirapex for another two years, those later injuries

are time-barred. "[T]he infliction of appreciable and actual harm, however uncertain in amount, will commence the running of the statute of limitations." Grisham, 151 P.3d at 1162 (quotation omitted). Mancini's gambling losses in 2006 and 2007 were "appreciable and actual harm" that triggered accrual of the statute of limitations in early 2008. See DeRose v. Carswell, 242 Cal. Rptr. 368, 370-77 (Cal. App. 1987), superseded on other grounds, Quarry v. Doe I, 272 P.3d 977, 987 (Cal. 2012).

**C. The Procedural Issue.** Mancini argues the district court abused its discretion by denying his motion to stay defendants' motion for summary judgment pending discovery as to whether defendants knew that Mirapex rendered its users unable to understand the nature or effects of their acts. When a motion for summary judgment is filed before the completion of discovery, as in this case, Rule 56(d) of the Federal Rules of Civil Procedure (formerly Rule 56(f)) provides that the district court may grant such relief if the nonmovant shows "it cannot present facts essential to justify its opposition." It is not enough to present a list of facts sought to be discovered. The nonmovant must "articulate how those facts [a]re relevant to rebut the movant's showing of the absence of a genuine issue of fact." Ray v. American Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010) (quotation omitted).

Here, the district court concluded that "whether Defendants knew that Mirapex caused such a condition does not shed any light on whether this particular plaintiff, Mancini, himself, was or was not insane at the time his cause of action accrued." We agree. At the time the district court ruled, the case had been pending for over two years, numerous companion cases had settled, and nothing had prevented Mancini from conducting discovery or obtaining an expert opinion addressing whether he was insane within the meaning of § 352(a) when the cause of action accrued in early 2008. There was no abuse of discretion. See id. at 922 (standard of review).

For the foregoing reasons, the judgment of the district court is affirmed.

_____