In re Bill J. EADS and Patsy Eads, Debtors.

Robert HAWKINS, Chapter 7 Trustee, Plaintiff,

v.

Bill J. EADS, individually and as successor or representative of Patsy Eads, deceased; Don Bricker Construction, Inc., a California Corporation; Oakhurst Meadows Estates, a California limited partnership; and Don Bricker, individually, Defendants.

DON BRICKER CONSTRUCTION, INC.; Oakhurst Meadows Estates; and Don Bricker, Third–Party Plaintiffs,

v.

John DUFFY, individually; and GTY & Associates, Inc., a California Corporation, Third–Party Defendants.

Bankruptcy No. 91–20795–C–7. Adv. No. 91–2176.

United States Bankruptcy Court, E.D. California.

Dec. 30, 1991.

See also 135 B.R. 387.

Robert H. Scribner, W. Richard Lee, Hanno T. Powell (argued), Kimble, MacMichael & Upton, Fresno, Cal., for plaintiff.

David Ray Jenkins, David Silva (argued), Lang, Richert & Patch, Fresno, Cal., for Bill J. Eads and successor of Patsy Eads.

## MEMORANDUM DECISION ON MOTION TO SUBSTITUTE PROPER PARTY

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

The death of Patsy Eads, who is a debtor in this bankruptcy case and a defendant in this adversary proceeding, occasions this decision regarding the effect of death in the context of a bankruptcy case and an adversary proceeding. I write because of the dearth of reported decisions on: (1) procedure following death of a debtor; (2) procedure following death of a party to a bankruptcy adversary proceeding; and (3) abatement of various causes of action that arise under the Bankruptcy Code.

At the time of her death, Ms. Eads was a joint debtor in a chapter 7 case (the case having recently been converted from chapter 11) and was one of the defendants in an adversary proceeding brought by the trustee to unravel and remedy, on several theories, an allegedly collusive sale in which as much as $800,000.00 was siphoned from the chapter 11 estate.

1. *Effect of Death of Debtor on Bankruptcy Case.*

Although the death of a debtor in a case under chapter 11, 12, or 13 may lead to dismissal (i.e. abatement) of the reorganization or debt adjustment case, a chapter 7 debtor's death does not abate the liquidation case. Fed.R.Bankr.P. 1016.

The rule of no abatement in a liquidation case is continued from section 8 of the Bankruptcy Act of 1898, even though specific language on the point was omitted from the Bankruptcy Code as unnecessary. 8 L. King, Collier on Bankruptcy ¶ 1016.04 (15th ed. 1991). The Congress could hardly have been more clear about the preservation of the no abatement rule when, in identical language in the House and Senate Reports, it articulated its analysis of how a chapter 7 debtor's death fits into the scheme it was enacting:

> Bankruptcy Act § 8 has been deleted as unnecessary. Once the estate is created, no interests in property of the estate remain in the debtor. Consequently, if the debtor dies during the case, only property exempted from property of the estate or acquired by the debtor after the commencement of the case and not included as property of the estate will be available to the representative of the debtor's probate estate. The bankruptcy proceeding will continue in rem with respect to property of the [e]state, and the discharge will apply in personam to relieve the debtor, and thus his probate representative, of liability for dischargeable debts.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 83 (1978); H.Rep. No. 95–595, 95th Cong., 1st Sess. 368 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5869, 6324.

Federal Rule of Bankruptcy Procedure 1016 restates the law on the effect of death in chapter 7 and fills in an apparent gap in the Bankruptcy Code by identifying the standards to be applied in determining whether to dismiss or proceed with a case under chapters 11, 12, or 13.[1]

Rule 1016 does not, however, prescribe the mechanics for bringing before the court the question of what to do following the demise of debtor in chapter 11, 12, or 13.[2] The court must choose between dismissing the case and further administration if such administration is (1) "possible" and (2) "in the best interest of the parties." As consideration of dismissal and its alternatives requires notice and an opportunity for a hearing,[3] someone needs to do something when a debtor in a case under chapters 11, 12, or 13 dies.[4]

In short, when, as here, a chapter 7 debtor dies, no procedural measures are necessary in the bankruptcy case itself. When a debtor in a case under a different chapter dies, the court has a determination to make and parties in interest have an obligation to bring the question before the court.

---

1. Federal Rule of Bankruptcy Procedure 1016 provides as follows:

   Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

   The rule was amended, effective August 1, 1991, changing "insanity" to "incompetency" so as to conform to Federal Rule of Civil Procedure 25 and including chapter 12 cases.

2. That would have been a problem in this case had Patsy Eads died several months earlier while the case was still in chapter 11.

3. 11 U.S.C. §§ 1112, 1208, and 1307; Fed. R.Bankr.P. 2002.

4. Although Rule 1016 is silent on the point, effective implementation of the rule necessitates a conclusion that all parties in interest have a *duty* to inform the court of the fact of death. It would be appropriate for a party to borrow from Rule 25 and file a suggestion of death on the record and ask that the court notice a hearing on the question of whether to dismiss or to proceed with the case.

### 2. *Effect of Death of Party in Adversary Proceeding.*

In an adversary proceeding, specific procedural steps are required if the deceased, including a chapter 7 debtor, is a party. The mechanics are set out at Rule 25, which applies in adversary proceedings. Fed.R.Bankr.P. 7025.[5] Rule 25 permits substitution of the successor or representative of the deceased party so long as the claim is not extinguished, i.e. abated, by the death.

### a. Motion for Substitution.

■ The procedure for dealing with the death of a party to a bankruptcy adversary proceeding is the same as in civil actions in the district courts. Rule 25 requires a motion for substitution. The motion may be made by any party or by the successors or representatives of the deceased party and must be served, together with notice of hearing, on parties in the manner required by Federal Rule of Civil Procedure 5[6] and on persons who are not parties in the manner provided in Federal Rule of Civil Procedure 4 for service of a summons.

The motion can be made at any time unless someone has triggered a deadline. Specifically, the motion must be within 90 days after the death is suggested upon the record by service of a statement of the fact of death.[7] Fed.R.Civ.P. 25(a)(1); 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1958 (1991); 3B J. Moore et al., *Moore's Federal Practice* ¶ 25.06[3] (1991). The 90-day deadline, however, may be enlarged or reduced. Fed.R.Bankr.P. 9006(b) and (c).[8]

■ In this instance, the plaintiff triggered the deadline by serving a statement of the fact of death suggesting death on the record. As the plaintiff filed this motion seventy-eight days after such service, it was timely made.[9]

### b. Abatement of Actions.

■ An essential element to substitution under Rule 25 is that the claim survived the death of the party. A timely motion for substitution can be granted only with respect to claims that are not extinguished by death.[10] Fed.R.Civ.P. 25(a)(1). Each claim is examined independently.

---

**5.** *Federal Rule of Bankruptcy Procedure 7025 provides:*

> Subject to the provisions of Rule 2012 [automatic substitution of successor trustee], Rule 25 F.R.Civ.P. applies in adversary proceedings.

Rule 25 also applies to "contested matters" (i.e. disputed motions not within adversary proceedings) by way of Federal Rule of Bankruptcy Procedure 9014 and to contested involuntary bankruptcy petitions, contested petitions commencing a case ancillary to a foreign proceeding, and to all proceedings to vacate an order for relief by way of Federal Rule of Bankruptcy Procedure 1018.

**6.** Federal Rule of Bankruptcy Procedure 7005 provides:

> Rule 5 F.R.Civ.P. applies in adversary proceedings.

**7.** Federal Rule of Civil Procedure 4 is incorporated in part and modified by Federal Rule of Bankruptcy Procedure 7004, the first sentence of which provides:

> Rule 4(a), (b), (c)(2)(C)(i), (d), (e) and (g)–(j) F.R.Civ.P. applies in adversary proceedings....

Fed.R.Bankr.P. 7004(a).

The remainder of Rule 7004 provides for simplified nationwide service by first class mail and by publication.

The reference in Rule 25 to Rule 4 means, in bankruptcy, Rule 4 as modified by Rule 7004 because of the provisions of Rule 7002:

> Whenever a Federal Rule of Civil Procedure applicable to adversary proceedings makes reference to another Federal Rule of Civil Procedure, the reference shall be read as a reference to the Federal Rule of Civil Procedure as modified in this Part VII.

**8.** Federal Rule of Civil Procedure 6(b) is substantially identical to Federal Rule of Bankruptcy Procedure 9006(b). There is no civil rule counterpart to Rule 9006(c).

**9.** Although the plaintiff's motion refers to the decedent as defendant, the motion encompasses her other capacity—cross-claim defendant—as well. Rule 25 does not require multiple motions to be made with respect to one party.

**10.** The moving party has the obligation, out of good lawyerly practice, to address the issue, as do all others appearing in connection with the motion. But, as it is a question of substantive law, the court must consider the question even if the parties are oblivious to it.

■ Abatement of a claim on death is a question of substance as to which state law governs for state claims and federal law for federal claims. 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* §§ 1952 and 1954 (1991). Although state law on survival of actions is generally settled by statute,[11] there is no comprehensive federal statute on survival.[12]

■ In assessing whether a federal claim survives the death of a party, one looks first to the statute creating the cause of action in search of the intent of the Congress. If the statute does not settle the matter, then one turns to federal common law.

The federal common law rule has been that causes of action based on "penal" statutes abate, while those based on "remedial" statutes survive. *Schreiber v. Sharpless*, 110 U.S. 76, 80, 3 S.Ct. 423, 424, 28 L.Ed. 65 (1884). Recognizing that terms like "penal" and "remedial" are, of course, labels that are of themselves not very helpful, courts have tried to give content to them. *E.g., First National Bank & Trust Co. v. Flatau (In re Wood)*, 643 F.2d 188, 190 (5th Cir.1980); *Derdiarian v. Futterman Corp.*, 223 F.Supp. 265 (S.D.N.Y. 1963); 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1954 (1991). For example, statutory civil penalties are frequently "remedial" notwithstanding that they exceed actual loss. *See Estate of Rau v. Commissioner of Internal Revenue*, 301 F.2d 51, 55–57 (9th Cir.), *cert. denied*, 371 U.S. 823, 83 S.Ct. 41, 9 L.Ed.2d 62 (1962); *Porter v. Household Fin. Corp.*, 385 F.Supp. 336, 340–44

(S.D.Ohio 1974) (cataloging cases). The modern trend favors survival.

3. *Abatement of Causes of Action Arising Under Bankruptcy Code.*

The claims that are now in question all arise under the Bankruptcy Code: (1) denial of chapter 7 discharge, 11 U.S.C. § 727(a); (2) avoidance of unauthorized post-petition transfer of property of the estate, 11 U.S.C. § 549; (3) recovery of improperly transferred property or its value, 11 U.S.C. § 550; (4) avoidance of collusive sale or recovery of the difference between the sales price and the true value, 11 U.S.C. § 363(n); and (5) punitive damages, 11 U.S.C. § 363(n).[13] The issue is whether any of these causes of action abated as against Patsy Eads when she died.

■ The analysis of survival of actions that arise under the Bankruptcy Code begins with the rule that the death of the debtor does not abate the liquidation case but may abate cases under chapters 11, 12, and 13 unless further administration is possible and in the best interest of the parties. As noted above, the express intention of the Congress regarding the effect of death is restated and implemented by Federal Rule of Bankruptcy Procedure 1016.

a. Objection to Discharge.

■ The effect of the debtor's death on an action to deny the debtor a chapter 7 discharge is straightforward and is settled by reasonable inferences drawn from the Bankruptcy Code. As discussed above, the liquidation case does not abate, and a chapter 7 debtor can be discharged. If a posthumous discharge can be granted, it fol-

---

**11.** There are two cross-claims against Patsy Eads that require little discussion in view of California's statute on survival of actions. They are for indemnification and fraud based on California law, which also governs the question of their abatement. Under California law, claims for indemnification and fraud do not abate upon the death of a party. Cal.Probate Code § 573; 16 A. Schwing, *California Practice, Defenses in Civil Actions* § 17.2 (1991). Punitive damages, however, cannot be awarded against a decedent's personal representative on account of the decedent's conduct. Cal.Probate Code § 573(b).

**12.** A civil action for damages commenced by or on behalf of the United States or in which the United States is interested does survive the death of a defendant. 28 U.S.C. § 2404.

**13.** The chapter 7 trustee seeks the identical relief with respect to the joint debtor, Bill Eads, and (except for denial of discharge) from the other participants in the allegedly collusive and unauthorized sale.

lows that a discharge can also be denied. Thus, an action objecting to discharge under 11 U.S.C. § 727 does not abate upon the death of the debtor.

### b. Trustee's Avoiding Powers.

■ The death of the defendant on claims under 11 U.S.C. §§ 549 and 550 is also easily resolved from the terms of the Bankruptcy Code. A corollary to the power to continue the posthumous administration of any bankruptcy case is the power to exercise all of the avoiding powers authorized by the Bankruptcy Code as integral to case administration. Thus, the related causes of action to reverse an unauthorized post-petition transfer under section 549 and to recover the property or its value under section 550 do not abate.[14]

### c. Actions under 11 U.S.C. § 363(n).

■ Abatement of claims under section 363(n), which provides remedies for collusion in bankruptcy sales, is complicated by the presence of a punitive damages provision:

> (n) The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

14. *The same conclusion applies to the liability of the trustee's other avoiding powers—11 U.S.C. §§ 544–548 and 724(a)—that are covered by section 550.*

15. *The original version used the same language in different word order:*

> *The court may grant judgment in favor of the estate and against any such party that entered into such agreement in willful disregard of*

11 U.S.C. § 363(n), *as amended,* Pub.L. 98–353, 98th Cong., 2d Sess. (1984).[15]

■ Insofar as the remedies include avoiding the sale and recovering the difference between the collusive price and the value of the property, the analysis is identical to the other avoiding powers discussed above—no abatement results from the death of the defendant.

The punitive damages provision gives pause because "punitive" sounds like "penal." The House and Senate reports describing the provision tell us that:

> The subsection does not specify the precise measure of damages, but simply provides for punitive damages, to be fixed in light of the circumstances.

H.Rep. No. 95–595, 95th Cong., 1st Sess. 346 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 57 (1978), U.S.Code Cong. & Admin.News 1978, 5843, 6302, 6303.

■ Section 363(n) punitive damages are not the same punitive damages that are available in common law actions. Rather, they are statutory damages for collusion in bankruptcy sales, which is but a species of bid rigging. Such a statutory damage provision is not unlike antitrust treble damages, patent treble damages, civil tax fraud penalties, securities fraud statutory damages, and Truth in Lending Act statutory damages, all of which have been held to survive the death of the offender. *Estate of Rau,* 301 F.2d at 51 (tax civil fraud); *Flatau,* 643 F.2d at 188 (TILA); *Porter,* 385 F.Supp. at 336 (cataloging cases).

A common feature of such statutory damages is that they function both to compensate and to deter. Thus, for example, in *Rau* the Ninth Circuit noted that underpayment of taxes occasioned financial losses that are difficult to quantify but which can be the basis for concluding that there is damage to property of the United States.

> this subsection for punitive damages in addition to any recovery under the preceding sentence.

As the language does not change in the 1984 amendment, which plainly was for the purposes of correcting inelegant draftsmanship, the original legislative history may still be relied upon as a source for interpretation.

Accordingly, the action for a penalty survived the taxpayer's death.

Similarly, some losses to the bankruptcy estate that are difficult to quantify are subsumed in section 363(n)'s punitive damages. Even with the power to recover costs and attorney's fees and expenses, the basic section 363 remedies of either avoiding the sale or recovering the difference between the value and the price does not necessarily fully compensate all losses to the bankruptcy estate. It is not difficult to imagine other losses rationally related to the bid rigging that are difficult to quantify. In the absence of proof of "willful disregard" of section 363(n), the Congress was content to limit recovery to the obviously quantifiable items. With such proof, it permitted the award to encompass losses that are more difficult to quantify as well as sums for purposes of deterrence.

The primary difference between the section 363(n) punitive damages and other multiple or fixed damages imposed by federal statutes that have been held to survive the death of the wrongdoer, is that the Congress left the courts with more discretion over the amount to award. In order to accomplish that end, it used the less precise term—"punitive damages"—without incorporating related features of that term where it is used at common law, leaving the courts to fix the damages in light of the circumstances.[16] That flexibility, however, does not alter the status of section 363(n) punitive damages as a statutory penalty.

The weight of the decisions in favor of the survival of actions for penalties under analogous federal statutes leads to the conclusion that an action under section 363(n), even if it seeks punitive damages, survives the death of the defendant.

\*    \*    \*

In sum, none of the causes of action in the complaint or the cross-claim abated upon the death of Patsy Eads. As there was a timely motion to substitute her personal representative, the conditions of Rule 25(a) have been satisfied.

The motion is GRANTED.

---

**16.** To the argument that the wrongdoer's heirs should not be made to pay a penalty, it is sufficient answer that the court is to take into account the "circumstances" when making an award. Death of a wrongdoer is unquestionably one "circumstance" that is relevant to the deterrence component of section 363(n) punitive damages; whether that circumstance will lead to a lower award necessarily will depend on the other relevant circumstances of the particular case. The matter is best left to case-by-case development.