**In re Cirilo E. CRUZ, Juana Cruz, Debtors.**

**Cirilo E. Cruz, Plaintiff,**

**v.**

**Aurora Loan Services LLC; SCME Mortgage Bankers, Inc.; ING Bank, F.S.B.; Mortgage Electronic Registration Systems, Inc.; and Does 1 to 100, Defendants.**

**Bankruptcy No. 11–01133–MM13. Adversary No. 11–90116–MM.**

United States Bankruptcy Court, S.D. California.

Aug. 11, 2011.

Jeffery R. Menard, Law Offices of Jeffery R. Menard, San Diego, CA, for Plaintiff.

James M. Hester, Melissa Robbins Coutts, McCarthy & Holthus, LLP, San Diego, CA, Richard W. Esterkin, Morgan, Lewis & Bockius LLP, Los Angeles, CA, for Defendants.

SCME Mortgage Bankers, Inc., pro se.

## MEMORANDUM DECISION ON MOTIONS TO DISMISS SECOND AMENDED COMPLAINT

MARGARET M. MANN, Bankruptcy Judge.

### I. *INTRODUCTION*

■ The Court has considered the Motions ("Motions") to Dismiss the Second Amended Complaint ("SAC") of debtor and plaintiff Cirilo E. Cruz[1] ("Cruz")

---

1. The Court rules on the Motions despite the recent death of plaintiff Cruz. His demise does not abate this adversary proceeding, which pursues claims which now either belong to his estate or successor. Fed.R.Civ.P. 25 applies to allow the substitution of the successor of the deceased party in this case. *Hawkins v. Eads,* 135 B.R. 380, 384 (Bankr. E.D.Cal.1991); *see* Fed. R. Bankr.P. 7025. The Court will decide any motion of substitution by any party or by the successors of Cruz at a later time. *Hawkins,* 135 B.R. at 384. The Chapter 13 case remains pending as Cruz's wife is a co-debtor, and its status will be addressed in the bankruptcy case in chief pursuant to Fed. R. Bankr.P. 1016.

brought pursuant to Fed. R. Bankr.P. 7012, incorporating by reference Fed. R.Civ.P. 12(b)(6), by Defendants Aurora Loan Services ("Aurora"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and ING Bank, F.S.B. ("ING").[2] The Court grants the Motions in part and denies them in part for the reasons set forth in this Memorandum Decision.

All Truth–In–Lending–Act ("TILA") related causes of action are dismissed with prejudice. The Court concludes that Cruz cannot state a cause of action under any theory challenging the TILA disclosure because his claims are either unripe or barred by the statute of limitations. The TILA allegations cannot be stated as state law claims because of federal preemption as an alternative ground for dismissal. The Motions are granted to the additional extent they assert the foreclosure of the Property was wrongful due to MERS' unauthorized substitution of trustee.

The Court denies the Motions to the extent that they assert ING was not required to record its assignment of beneficial interest before it foreclosed. The Motions request the Court reconsider its holding in *U.S. Bank N.A. v. Skelton (In re Salazar)*, 448 B.R. 814, 822–24 (Bankr. S.D.Cal.2011), that California Civil Code § 2932.5[3] pertains to both mortgages and deeds of trust. For the additional reasons set forth in this Memorandum Decision, the Court reaffirms its analysis in *Salazar* and concludes that ING's failure to record

its beneficial interest rendered its foreclosure sale void.

## II. FACTUAL ANALYSIS

### A. Standard of Review

The Court assumes the allegations of the SAC are true for purposes of the Motions and construes them liberally in favor of Cruz. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir.1997). However, the Court must also find that the SAC pleads sufficient facts to state a claim of relief that is "plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly*). The SAC allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see also Iqbal*, 129 S.Ct. at 1950 (citing Fed. R.Civ.P. 8(a)(2)).

### B. Factual Summary

The SAC allegations relate to the 2004 financing of Cruz's residence located at 3148 Toopal Drive, Oceanside, CA 92054 ("Property"), by a loan provided by SCME ("Loan") documented by a variable interest rate note ("Note") and deed of trust ("DOT"). Aurora was the servicer of the Loan and MERS was the initial nominal beneficiary of the Loan. Cruz claims the TILA disclosure provided to him when the Loan was made was misleading by under-

---

**2.** Defendant SCME Mortgage Bankers, Inc. ("SCME") has been defunct since 2007 and has not responded in any way to the complaints filed by Cruz. Quality Loan Service Corporation ("Quality") has been deleted as a Defendant in the SAC, likely due to its filing of a Declaration of Nonmonetary Status pursuant to Cal. Civ.Code § 29241 ("Status Declaration") to which Cruz did not timely object. In the Status Declaration, Quality stated it did not hold title to the Property and only

served as the parties' agent. Quality also agreed to be bound by any nonmonetary order or judgment of this Court. The Court will thus address the SAC only as it pertains to the moving parties Aurora, ING and MERS (collectively "Defendants").

**3.** All references to a statutory section are references to the California Civil Code unless otherwise specified.

stating its total cost through maturity, which caused him to forego less expensive financing alternatives.

After Cruz defaulted on the Loan, Defendants commenced the foreclosure process. ING had become the successor beneficiary under the DOT at some time before, but never recorded an assignment of beneficial interest. Cruz then entered into a forbearance agreement with Aurora. ING foreclosed on the Property on June 2, 2010 during the extended forbearance period agreed to by Aurora, even though Cruz was current on his payments at the time. ING's interest, as assignee beneficiary, first appeared of record in the Trustee's Deed Upon Sale ("Trustee's Deed"), recorded a few weeks after the foreclosure. The Trustee's Deed identified ING as the foreclosing beneficiary.

### C. Procedural History

Cruz and his wife filed their joint Chapter 13 bankruptcy petition on January 25, 2011, and Cruz filed his First Amended Complaint ("FAC") about a month thereafter. Defendants responded to the FAC with motions to dismiss brought pursuant to Fed. R. Bankr.P. 7012, incorporating by reference Fed.R.Civ.P. 12(b)(6) ("First Motions"). These were denied in part and granted in part in this Court's order entered May 24, 2011 ("FAC Order"). The First Motions were denied to the extent they related to Aurora's forbearance agreement. The Court also denied the First Motions pertaining to whether causes of action were stated under TILA and under California Business and Professions Code § 17200 ("Section 17200"). The Court granted the First Motions with leave to amend as to whether the TILA causes of action were barred by the statute of limitations; whether MERS had authority to substitute the trustee under the DOT; whether ING's interest was required to be of record; and whether Cruz could allege facts to tender the Loan amount to set aside the foreclosure under TILA or to claim damages. The Court also granted leave to amend for Cruz to clarify which Defendants were named in the different causes of action.

In response to the FAC Order, Cruz filed his SAC,[4] to which Defendants responded with these Motions.

### III. LEGAL ANALYSIS

### A. The First Third and Tenth Causes of Action of the SAC are Preempted.

■ Cruz attempts in the first, third and tenth causes of action to allege his TILA claims indirectly under Section 17200, and as state law fraud and negligent misrepresentation claims. Since these causes of action rely upon the TILA disclosures made to Cruz when the Loan was made, they must be dismissed with prejudice due to federal preemption. In *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir.2008), the Section 17200 claims were alleged based upon TILA disclosures. The Ninth Circuit dismissed these claims, finding Congress intended for TILA to preempt the field. *Id.* at 1004–06. Here as well, although the deceit and Section 17200 claims do not reference TILA, they are based solely upon the representations mandated by TILA. As in *E*Trade Mortg. Corp., id.*, attempts to

---

**4.** The SAC alleges ten causes of action: 1) intentional misrepresentation as to SCME and ING; 2) intentional misrepresentation as to Aurora and ING; 3) negligent misrepresentation as to SCME and ING; 4) negligent misrepresentation as to Aurora and ING; 5) breach of contract as to Aurora and ING; 6) breach of implied covenant of good faith and fair dealing as to ING and Aurora; 7) promissory estoppel as to ING and Aurora; 8) wrongful foreclosure as to ING, Aurora and MERS; 9) quiet title as to ING; and 10) violation of Section 17200 as to all Defendants.

camouflage these claims from TILA scrutiny cannot save them from dismissal.

## B. *The First, Third and Tenth Causes of Action Relating to TILA Disclosures are Not Timely.*

Even if the preemption bar did not apply, the Court concludes the first, third and tenth causes of action should still be dismissed. The FAC Order at ¶¶ 12–14 granted leave to amend the TILA causes of action to specify when Cruz discovered, or should have discovered, the harm of the alleged TILA inaccuracy. *Gutierrez v. Mofid,* 39 Cal.3d 892, 897–98, 218 Cal.Rptr. 313, 705 P.2d 886 (1985) (relevant discovery time is of the nature of the harm, not the existence of legal remedies). This is the date of discovery under state law for statute of limitations tolling purposes. *See Grisham v. Philip Morris USA, Inc.,* 40 Cal.4th 623, 646, 54 Cal.Rptr.3d 735, 151 P.3d 1151 (2007) (personal injury claim for a tobacco company's misrepresentation accrued at the time that "the physical ailments themselves were, or reasonably should have been, discovered").

Rather than providing more detail on when the harm was discovered, as required by the FAC Order, the SAC hedges the issue. It alleges that Cruz could not have discovered the understatement of the cost of the 2004 Loan until the TILA disclosure was reviewed by an expert in 2010. Alternatively, the SAC alleges that the harm could not be discovered until 2015, when the interest rate will become variable. SAC ¶ 23. But under either discovery date, Cruz cannot state a cause of action.

■ If the alleged harm occurred when the Loan was made in 2004 by misleading Cruz into a bad financing choice, then the cause of action is barred by the three year statute of limitations for state law deceit claims. Cal.Code Civ. Pro. § 338(d). Even though a complicated analysis is required, it is possible to discern from the Loan documents attached to the SAC that the total cost of financing on the TILA disclosure differed from the stated interest rate. Although Cruz only alleges state law deceit claims, the Court finds persuasive Ninth Circuit authority that addressed when the harm of TILA misrepresentations should be discovered. Although these claims are alleged under state law, both federal and state courts have applied TILA to assess related state law claims. *See e.g. Pacific Shore Funding v. Lozo,* 138 Cal.App.4th 1342, 1347, 42 Cal.Rptr.3d 283 (2006); *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir.2010). Under *Meyer v. Ameriquest Mortgage Co.,* 342 F.3d 899, 902 (9th Cir.2003), because the plaintiffs "were in full possession of all information relevant to the discovery of a TILA violation and a § 1640(a) damages claim on the day the loan papers were signed," they could not toll the statute of limitations.

Cruz was in full possession of the Loan documentation in 2004. Because there are no allegations of fraudulent concealment, or any other action on the part of any Defendant to cover up the misrepresentations, the deceit causes of action accrued when the Loan was made. *Id.* This was the date the harm to Cruz could have been determined from the face of the Loan documents.

■ The alternative explanation of the discovery of the harm is that it has not yet occurred and will not occur, if at all, until the interest rate on the Loan becomes variable in 2015. SAC ¶¶ 23–33. Whether the Loan will be more or less expensive than either the stated 5.85% initial contract rate, or the projected variable index rate of 4.85% starting in 2015, cannot be known until 2015. It is beyond the capabilities of this Court, or any expert or jury, to speculate about future interest rates. If

interest rates drop below the index assumption used when the Loan was made, Cruz will receive a windfall. If they rise, Cruz will suffer loss assuming he is still paying on the Loan. This lack of a concrete impact on the parties renders these claims unripe for resolution. *See Thomas v. Union Carbide Agricultural Prod. Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (ripeness doctrine prevents premature adjudication where the impact of a claim against the parties cannot be known); *see also Exxon Corp. v. Heinze,* 32 F.3d 1399, 1404 (9th Cir.1994).

The first, third and tenth causes of action, to the extent they are related to the TILA disclosures,[5] are accordingly dismissed with prejudice because they are either barred by the statute of limitations or are unripe.

**C. *The Eighth and Ninth Causes of Action for Wrongful Foreclosure and Quiet Title Cannot Be Based upon a Wrongful Substitution of Trustee, But Only upon Section 2932.5.***

There are two separate factual scenarios alleged in the wrongful foreclosure causes of action: 1) that MERS lacked authority to substitute Quality as trustee of the DOT; and 2) that ING had no recorded beneficial interest at the time it foreclosed. The second scenario, but not the first, alleges a viable cause of action.

**1. The Substitution of Trustee by MERS was Valid.**

In the FAC Order, Cruz was directed to specifically allege why MERS, as the nominee of the Lender under the DOT and the

beneficiary of record, lacked authority under § 2934a(a)(1)(A) to substitute the trustee. The Court earlier ruled in the FAC Order that if MERS was authorized by the Lender under the DOT to substitute the trustee, this substitution would be valid.

▇ Instead of alleging specific facts that MERS was not authorized by the Lender to substitute the trustee, Cruz relies upon general allegations that two parties cannot both be the beneficiary. SAC ¶ 101. These allegations seem to leave the resolution of whether MERS was authorized to substitute the trustee to the outcome of the litigation. But California law does not provide a cause of action to determine whether or not a party has authority to institute foreclosure proceedings. *Gomes v. Countrywide Home Loans,* 192 Cal.App.4th 1149, 1154–56, 121 Cal.Rptr.3d 819 (2011).

▇ Cruz separately alleges that ING was the beneficiary throughout the foreclosure process.[6] He argues in his opposition that the DOT follows the Note, and MERS could not have been the beneficiary once ING was assigned the Note. This argument ignores that once ING was entitled to enforce the Note, it became the Lender under the DOT, even if its interest was not yet of record. As such, ING could direct MERS, as the beneficiary of record and as the Lender's nominee, to substitute Quality as the trustee of the DOT. *Ferguson v. Avelo Mortgage LLC,* 195 Cal.App.4th 1618, 1628, 126 Cal.Rptr.3d 586 (2011) (authorized beneficiary may substitute the trustee). *Avelo* relied upon § 2934a which

---

**5.** Cruz argued that since the Court denied the First Motions to dismiss the Section 17200 cause of action, MERS is precluded from challenging it again. But the Court's analysis of the ripeness of this dispute is based upon new allegations of the SAC found in paragraph 23–that Cruz "would have discovered the interest rate discrepancy in the year 2015 when his payments would have deviated sig-

nificantly from what the TILA disclosure statement reflected."

**6.** In SAC ¶ 100, Cruz alleges that "ING claims that they are and were the beneficiary of the Deed of Trust throughout the foreclosure process." Cruz also alleges in SAC ¶ 61 that "Aurora was acting as agent for ING," including when Aurora entered into the "Forbearance Contract" in October 2009. SAC ¶ 83.

specifically authorizes substitutions of trustees to be recorded after the substituted trustee takes action. *Id.*

Leave to amend the substitution of trustee claim will not be granted because Cruz' allegations that ING was the beneficiary throughout the foreclosure process disprove this claim. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (leave to amend may be denied if the allegation of other facts, consistent with those plead, cannot cure the deficiency).

### 2. Section 2932.5 Applies to Deeds of Trust.

■ Although Cruz's other causes of action are fatally defective, Cruz has properly stated claims for wrongful foreclosure and quiet title based upon ING's non-judicial foreclosure of the DOT.[7] Section 2932.5 required that ING's interest be of record at the time of the foreclosure sale, and it was not. MERS was the beneficiary of record when ING foreclosed, but ING was the actual foreclosing beneficiary.[8] The Trustee's Deed identified ING as the foreclosing beneficiary, and that recital is a binding statement of fact. *Bank of America v. La Jolla Group II*, 129 Cal.App.4th 706, 711–12, 28 Cal.Rptr.3d 825 (2005). Because ING lacked an interest of record,

it was not authorized to proceed with the foreclosure sale under § 2932.5, rendering the sale void. *Dimock v. Emerald Properties*, 81 Cal.App.4th 868, 874, 97 Cal. Rptr.2d 255 (2000) (sale under deed of trust by former trustee *void*, and tender of the amount due is unnecessary); *Bank of America*, 129 Cal.App.4th at 712, 28 Cal. Rptr.3d 825.[9]

■ To reevaluate whether § 2932.5 concerns both mortgages and deeds of trust, the Court has carefully considered the "intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance ..." to attempt to determine how the California Supreme Court would rule. *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996). The Court remains convinced that the highest court in this state would hold that § 2932.5 requires an assignee trust deed beneficiary to record its interest before it non-judicially forecloses.

### a. The Plain Language of § 2932.5 Can Be Applied to Deeds of Trust.

Defendants first contend the plain language of § 2932.5[10] cannot accommodate deeds of trust within its ambit. Starting with a review of the statutory language,

7. Although not the focus of his SAC, which is instead on the substitution of trustee under the DOT, Cruz alleges sufficient facts to assert this claim in SAC ¶ 106.

8. Defendants do not contest that § 2932.5, if applicable, was not complied with by ING's foreclosure without its interest being of record. They merely contest whether the statute applies to deeds of trust, or only to mortgages.

9. *Avelo*, 195 Cal.App.4th at 1628, 126 Cal. Rptr.3d 586, on which Aurora relies for the broad statement that tender is required in *any* case seeking to set aside a completed sale, is not to the contrary. *Avelo* recognized that an unauthorized foreclose sale was void, but did not find the sale at issue was unauthorized.

There, the substitution of trustee was signed by a lender before it was assigned any interest in the deed of trust. Because § 2934a retroactively validates a substitution of trustee by an unauthorized beneficiary, the substitution of trustee was deemed valid as of the time the deed of trust was assigned. *Id.*, citing *Dimock*, 81 Cal.App.4th at 876–78, 97 Cal. Rptr.2d 255.

10. Aurora and ING also direct the Court to a portion of § 2920(b) asserting that mortgages and deeds of trust are mutually exclusive under the foreclosure statute. This assertion ignores that § 2920(b) by its express terms only applies "(f)or purposes of Sections 2924 to 2924h, inclusive ..." This limited exclusion of a deed of trust from the definition of a mortgage is patently inapplicable to § 2932.5.

and considering its legislative history, *see Conservatorship of Whitley*, 50 Cal.4th 1206, 1214, 117 Cal.Rptr.3d 342, 241 P.3d 840 (2010), the Court finds the plain language of § 2932.5 easily pertains to deeds of trust:

> Where a power to sell real property is given to a mortgagee, *or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument.* The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

(Emphasis added). The statute does not only apply to mortgagees but also to other encumbrancers. That a beneficiary under a deed of trust is an encumbrancer is confirmed by the California Supreme Court. "(M)ortgagees and trust deed beneficiaries alike hold security interests in property encumbered by mortgages and deeds of trust." *Monterey S.P. P'ship v. W.L. Bangham*, 49 Cal.3d 454, 461, 261 Cal.Rptr. 587, 777 P.2d 623 (1989) (rejecting that a deed of trust conveyed true title to the trustee). Section 2932.5 further provides that the "power [of sale] is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument." As the assignee of the Note, ING was the party entitled to the payment of money. It took title to the Property in satisfaction of the secured debt at the time of the foreclosure sale. Each of the clauses of § 2932.5 applies comfortably to deeds of trust.

The legislative history of § 2932.5 also supports its application to deeds of trust as well as mortgages. Section 2932.5 succeeded to § 858 verbatim as part of the 1986 technical revisions to California trust law. *See* Recommendation Proposing the Trust Law (Dec. 1985) 18 Cal. Law Revision Rep. (1985) p. 764; Selected 1986 Trust and Probate Legislation, (Sept. 1986) 18 Cal. Law Revision Com. Rep. (1986) p. 1483, *available at* http://www.clrc.ca.gov/Mreports-publications.html#V18. These technical revisions included two changes to California foreclosure law pertaining to deeds of trust—to renumber § 2932.5 as part of the non-judicial foreclosure statute, and to add § 2934b to apply Probate Code §§ 15643 (vacancy in the office of trustee) and 18102 (protections for third persons dealing with former trustee.) Had § 2932.5 been limited to mortgages, there would have been no need to revise it at the time of the other revisions to California trust law.

*Strike v. Trans–West Discount Corp.*, 92 Cal.App.3d 735, 742, 155 Cal.Rptr. 132 (1979) cited the predecessor to § 2932.5; *i.e.,* § 858 to validate the exercise of the power of sale by a trust deed beneficiary of record. *Tamburri v. Suntrust Mortg., Inc.,* 2011 WL 2654093 *4–5, 2011 U.S. Dist. LEXIS 72202 *12–13 (N.D.Cal. July 6, 2011) recognized that whether § 2932.5 applies to deeds of trust raises a serious question sufficient to grant a preliminary injunction against the sale of foreclosed property. The two authoritative treatises that discuss § 2932.5 also agree that deeds of trust fall within its purview. 4 Harry D. Miller & Marvin B. Starr, California Real Estate, §§ 10.2, 10:38, 10:39 [11] (3d ed.

---

11. MERS incorrectly cites 4 Harry D. Miller & Marvin B. Starr, California Real Estate, §§ 10:2, 10:38, 10:39 (3d ed. 2010) ("Miller & Starr") despite it being cited by MERS as an authoritative source on real estate. MERS quotes Miller & Starr to state that ("An assignment of the note and deed of trust need not be recorded to be effective...."). The text quoted by MERS pertains only to the effectiveness of assignments between the assignee and assignor, but not to § 2932.5. Miller & Starr in the same section, § 10:39,

2010); and Cal Jur 3d (Rev) Deeds of Trust § 112.[12]

Defendants do not discuss the interpretation of § 2932.5 by these persuasive treatises and other authorities. They point instead to the conveyance language of the DOT, which conveys title to the Property, "with power of sale," to the trustee, to claim the beneficiary cannot be the "encumbrancer" in whom a power of sale is vested. Not only does this contention ignore that the power of sale in the DOT is controlled and must be invoked by the beneficiary, it seeks to revive the outdated title distinction between mortgages and deeds of trust rejected by the California Supreme Court.

b. *Defendants' Primary Authority is Out-Dated.*

Defendants primarily[13] rely on *Stockwell v. Barnum,* 7 Cal.App. 413, 416–17, 94 P. 400 (1908), and the District Court cases[14] that follow it, to assert the power of sale in a deed of trust is held by the trustee, not the beneficiary. *Stockwell* is not a sound basis to determine how the California Supreme Court would apply § 2932.5 because it relies upon the archaic title theory of deeds of trust rather than the modern lien theory. 4 Witkin Sum. Cal. Law STRP § 6(2) (10th ed.) ("In most situations, the title theory has been disregarded, and the deed of trust has been deemed to create a mere lien on the property.").

In *Stockwell, id.* at 415, 94 P. 400, an assignee of a note and deed of trust failed to record her interest before the property was sold at a foreclosure sale. Before the foreclosure sale, the borrower had conveyed the property to someone else. *Stockwell* held that the purchaser at the foreclosure sale had superior title over the successor owner because the predecessor statute to § 2932.5 only applied to mortgages. *Id.* Its reason for the distinction

proceed to specifically apply § 2932.5 to deeds of trust as well as mortgages: "In the case of a deed of trust or mortgage with a power of sale, an assignee can only enforce the power of sale if the assignment is recorded, because the assignee's authority to conduct the sale must appear in the public records."

12. Cal Jur 3d (Rev) Deeds of Trust § 112 cites § 2932.5 and other authority for the following:

> The assignment of a note and trust deed ordinarily vests in the assignee all the rights and interest of the beneficiary. The assignee becomes the equitable owner of the security and is entitled, as successor to the beneficiary, to all that is equitably due on the trust deed including interest on the amount secured to the date of payment or tender. The assignee has a right to bring a foreclosure action and may exercise the power of sale in a security instrument if the assignment is duly acknowledged and recorded.

13. Defendants also cite two cases, neither of which supports that a deed of trust grants the power of sale to the trustee, rather than the beneficiary. *Garretson v. Post,* 156 Cal. App.4th 1508, 1516, 68 Cal.Rptr.3d 230 (2007) was actually a SLAPP case against the beneficiary arising from a claim of wrongful foreclosure, which summarily described the non-judicial foreclosure process. *Py v. Pleitner,* 70 Cal.App.2d 576, 579, 161 P.2d 393 (1945) involved an obsolete difference between the right of redemption between mortgages and deeds of trust, rather than whether the trustee or beneficiary held the power of sale. Since Code of Civil Procedure § 729.010 now provides for a right of redemption following a judicial sale under either a mortgage or a deed of trust, Civ. Proc. § 729.010 (Deering 2011), it is particularly inapposite here.

14. This Court respectfully is not bound by these District Court decisions. *See State Compensation Ins. Fund v. Zamora (In re Silverman),* 616 F.3d 1001, 1005 (9th Cir.2010) (reserving whether bankruptcy courts are bound by district court decisions within the district where the bankruptcy court sits, but recognizing problems with a non-uniform body of law might result).

was that a deed of trust "instead of creating a lien only, as in the case of a mortgage, passes the legal title to the trustee, thus enabling him in executing the trust to transfer to the purchaser a marketable record title." *Id.* at 417, 94 P. 400.[15]

 This reasoning of *Stockwell* is now inapposite. Under *Monterey,* 49 Cal.3d at 461, 261 Cal.Rptr. 587, 777 P.2d 623, a deed of trust is no longer a conveyance of actual title to the Property, but merely a lien. The borrower now retains actual title to the property. *Bank of Italy Nat. Trust & Sav. Assn. v. Bentley,* 217 Cal. 644, 656, 20 P.2d 940 (1933). That this title theory is discredited by the Supreme Court is recognized by the Ninth Circuit. *Olympic Federal Sav. & Loan Asso. v. Regan,* 648 F.2d 1218, 1221 (9th Cir.1981) (mortgages and deeds of trust are "legally identical," so that the borrower retains actual title to the property that the Internal Revenue Service can redeem despite the presence of a junior deed of trust). *See also Aviel v. Ng,* 161 Cal.App.4th 809, 816, 74 Cal.Rptr.3d 200 (2008) (to interpret a subordination clause in a lease, the terms mortgages and deeds of trust were treated as synonymous based upon *Bank of Italy,* 217 Cal. at 656, 20 P.2d 940).

This Court finds the California Supreme Court is likely to overrule *Stockwell's* holding that the trustee of a deed of trust holds actual legal title, rather than a lien. It has done so before. *Monterey,* 49 Cal.3d at 463, 261 Cal.Rptr. 587, 777 P.2d 623 (overruling *Johnson v. Curley* 83 Cal.App. 627, 257 P. 163 (1927), which held that

beneficiaries under a deed of trust were not necessary parties to an action to have that deed declared void for fraud).

#### c. *The Beneficiary, Not the Trustee, Holds the Power of Sale.*

 A better predictor than *Stockwell,* 7 Cal.App. at 416–17, 94 P. 400, of whether the California Supreme Court would apply § 2932.5 to deeds of trust, is that Court's analysis of the respective roles of trust deed trustees and beneficiaries found in *Monterey,* 49 Cal.3d at 463, 261 Cal.Rptr. 587, 777 P.2d 623. The trustee merely holds bare legal title to the extent necessary to reconvey the lien if the debt is paid, or to foreclose the security interest if it is not. *Id.* at 460, 261 Cal. Rptr. 587, 777 P.2d 623. The trustee is bound by no fiduciary duties, and has no duty to defend the rights of the beneficiary, or authority to appear in the suit in its behalf. *Id.* at 462, 261 Cal.Rptr. 587, 777 P.2d 623. The trustee of a deed of trust serves merely as a common agent of both parties. *Vournas v. Fidelity Nat. Tit. Ins. Co.* 73 Cal.App.4th 668, 677, 86 Cal.Rptr.2d 490 (1999). Because the beneficiary's economic interests are threatened when the existence or priority of the deed of trust is challenged, it is the real party in interest under a deed of trust. *Monterey,* 49 Cal.3d at 461, 261 Cal.Rptr. 587, 777 P.2d 623 (trust deed beneficiary must be named in a mechanics lien foreclosure suit since trustee does not protect its interests). *See also Diamond Heights Village Assn., Inc. v. Financial Freedom Senior Funding*

---

**15.** *Stockwell,* 7 Cal.App. at 417, 94 P. 400, secondarily based its holding on its conclusion that "[i]t is immaterial who holds the note," a conclusion recognized by Defendants as erroneous. In fact, they assert who holds the Note is dispositive, rather than "immaterial." Defendants claim that because ING was the holder of the Note at the time of the foreclosure, it was unnecessary for it to record the assignment, because when the Note

was transferred to ING, the beneficial interest in the DOT automatically transferred with it. *Polhemus v. Trainer,* 30 Cal. 685, 688 (1866) (interest in the collateral subject to the mortgage "does not pass unless the debt itself [is] assigned"). That ING is entitled to enforce the Note does not alone obviate compliance with § 2932.5, which also requires the assignment be recorded before the power of sale is exercised by the beneficiary.

*Corp.,* 196 Cal.App.4th 290, 304, 126 Cal. Rptr.3d 673 (2011) (beneficiary is the real party in interest in a fraudulent conveyance action to void the security).

To claim the trustee, rather than the beneficiary, is the party who holds the power of sale under the deed of trust, elevates form over substance. The beneficiary is the real party in interest and should comply with § 2932.5.

### d. *Section 2932.5 Protects Borrowers' Rights.*

The California Supreme Court is clear that the distinction between mortgages and deeds of trust is inapplicable where necessary to protect a borrower's rights. *Bank of Italy,* 217 Cal. at 658, 20 P.2d 940. Even though other statutes address the notices required to be sent to the borrower,[16] who no longer has a right to redeem the property after any foreclosure,[17] the borrower still has a right to strict construction of all of the non-judicial foreclosure statutes, including § 2932.5, to prevent an improper sale of its property. *See System Inv. Corp. v. Union Bank,* 21 Cal.App.3d 137, 153, 98 Cal.Rptr. 735 (1971) (harshness of nonjudicial foreclosure justifies strict compliance with statutes); *Bank of America,* 129 Cal.App.4th at 712, 28 Cal.Rptr.3d 825 ("Statutory provisions regarding the exercise of the power of sale provide substantive rights to the trustor and limit the power of sale for the protection of the trustor," citing Miller & Starr, § 10:123 (3d ed. 2003)). Deeds of trust are "far more widely used in this state" than mortgages. 4 Witkin Sum. Cal. Law STRP § 4 (10th ed.) (Citations omitted).

Application of § 2932.5 to deeds of trust advances California's broader statutory scheme to protect borrowers, consumer and otherwise, from a wrongful foreclosure.

MERS argues that the assignee beneficiary need not record its interest to prevent a gap in title. It again confuses the title to the lien of the deed of trust with title to the Property. That MERS was the beneficiary of record even though ING was the foreclosing beneficiary created a gap in title to the lien. ING was a stranger to the record before the foreclosure giving rise to suspicion that the sale was not authorized. This is the very risk that § 2932.5 was intended to safeguard. *Stockwell,* 7 Cal.App. at 416–17, 94 P. 400 ("the record should correctly show the authority of a mortgagee or his assigns to sell" to ensure that the title so conveyed be free from suspicion).

### D. *MERS Remains a Party to the Eighth and Tenth Causes of Action.*

MERS seeks to dismiss the only two causes of action against it in the SAC, the eighth (wrongful foreclosure) and the tenth (Section 17200). MERS remains a party to the wrongful foreclosure cause of action due to this Court's ruling on § 2932.5, even though the substitution of trustee claims found in that cause of action are dismissed. Because MERS may be liable for wrongful foreclosure on that basis, Cruz has also stated a viable 17200 claim as well.

---

**16.** MERS correctly points out that notice requirement for borrowers are also addressed by other statutes. *See* §§ 2924b(b)(1) (trustor and mortgagee must receive copy of recorded notice of default via mail), 2924b(b)(2) (trustor and mortgagee must receive copy of recorded notice of sale via mail) and 2937 (trustor and mortgagee of residential property must receive notice of assignment of servicing

of mortgage of trust deed via mail). This does not change the Court's view addressed in *Salazar,* 448 B.R. at 821, that § 2932.5 helps ensure borrowers know who actually owns the loan and is the real party in interest during the foreclosure process. *Id.* at 818.

**17.** *See* footnote 13, *infra.*

Section 17200 establishes a disjunctive three part definition prohibiting any "unlawful, unfair, or fraudulent business practice." "Each of these three adjectives captures a 'separate and distinct theory of liability.'" *Rubio,* 613 F.3d at 1203, citing *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1127 (9th Cir.2009). As amended by Proposition 64, Section 17200 is applicable to protect consumers who have suffered an injury in fact as well as business competitors. *Californians for Disability Rights v. Mervyns' LLC,* 39 Cal.4th 223, 228, 46 Cal.Rptr.3d 57, 138 P.3d 207 (2006).

Since MERS is not alleged to have participated in any fraudulent activity, the last prong is not at issue. Under its "unlawful" prong, Section 17200 borrows violations of other laws and makes them independently actionable. *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999). Although not a criminal statute, violation of other civil statutes can satisfy Section 17200. *State Farm Fire & Casualty Co. v. Superior Court,* 45 Cal.App.4th 1093, 1103, 53 Cal.Rptr.2d 229 (1996) (unlawful prong includes "anything that can properly be called a business practice and that at the same time is forbidden by law," including antidiscrimination laws, antitrust laws, environmental protection laws, fish and game laws, housing laws, labor laws, vehicle laws, and criminal laws (citations omitted)); *Rubio,* 613 F.3d at 1204 (TILA violation). The "unfair" prong is measured by the alternative public policy test adopted by *Rubio,* 613 F.3d at 1205, citing *Gregory v. Albertson's, Inc.,* 104 Cal. App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002). This test looks to whether the practice violates public policy as declared by "specific constitutional, statutory or regulatory provisions." *Rubio,* 613 F.3d at 1205. In *Rubio,* the Ninth Circuit simply noted that the statutory policy behind TILA would satisfy the "unfair" prong of the test. It in effect collapsed the two prongs where statutory violations are alleged. *Id.*

The allegations of the SAC support MERS' involvement in the violation of § 2932.5. MERS was the beneficiary of record, even though ING was the foreclosing beneficiary. The "unlawful" prong is met; as is the "unfair prong" under these allegations, and MERS will not be dismissed from either the eighth or tenth causes of action.

## IV. CONCLUSION

The distinction between mortgages and deeds of trust is more one of terminology than substance as *Monterey,* 49 Cal.3d at 464, 261 Cal.Rptr. 587, 777 P.2d 623 stated: "Regrettably, it appears to be too late in the development of our vocabulary to rename deeds of trust and the 'trustees' who act under those instruments." Weighing the dubious continuing viability of the *Stockwell* case against the other authority cited in this Memorandum Decision, the Court concludes that ING as the foreclosing beneficiary under the DOT is as subject to the mandates of § 2932.5 as if it held a mortgage. The DOT gives the authority to exercise the power of sale to ING, who is the real party in interest by law for foreclosure matters. For the same reasons as a mortgagee must record its interest before it forecloses, so must a beneficiary of a deed of trust under § 2923.5. The ministerial role of the trustee does not justify any distinction between the two instruments for purposes of § 2932.5 because the trustee as agent simply acts at the direction of the beneficiary.

This Memorandum Decision will constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052. Counsel for Cruz is directed to prepare an order in accordance with

this Memorandum Decision within ten days of the date of entry.

IT IS SO ORDERED.